PHILEMON B. SELBY, appellant, v RICHARD A. HUTCHINSON, administrator of Charles Teed, appellee.

### *Appeal from Knox.*

Where an affidavit was not embodied in the bill of exceptions, and the record did not show that the opinion of the Court overruling the motion on which it was based, was except-d to, the Supreme Court refused to consider the objection.

Motions for security for costs are addressed to the discretion of the Court, and a decision in relation to such motion cannot be assigned for error.

It is a general rule that an administrator is not personally liable for costs.

A misjoinder of counts, upon which the same judgment cannot be rendered, may be assigned for error.

In determining a question of misjoinder, the Court will be governed more by the form of the count than by the substance of it.

Where a party has performed labor under a special contract and has been prevented, by the act or default of the opposite party, from completing all he had undertaken to perform, he may recover for such labor in an action of *assumpsit*.

Where the record of a cause satisfactorily shows, that the parties did not deem it proper to question certain of their respective rights in the Court below, they must be considered as having waived them, and cannot be permitted to dispute them in a Court of appeal for the first time.

It is not every partial neglect or refusal to comply with some of the terms of a contract by one party, which will entitle the other to abandon the contract at once. In order to justify an abandonment of it, and of the proper remedy growing out of it, the failure of the opposite party must be a total one; the object of the contract must have been defeated or rendered unattainable by his misconduct or default.

ASSUMPSIT, in the Knox Circuit Court, brought by the appellee againt the appellant, and heard before the Hon. Norman H. Purple and a jury, at the November term 1846. The jury rendered a verdict for the plaintiff for $462·50, upon which there was judgment.

So much of the evidence and proceedings in the Court below as is material to the decision of the cause will be found to be stated by this Court.

*C. K. Harvey*, for the appellant.

I. The Court ought to have required security on the affidavit. Rev. Stat. 126–7, § 5. An administrator is liable

for costs. Ibid. *Burnap* v. *Dennis*, 3 Scam. 478. Estate is liable to the administrator sometimes. S. P. *Chevalier* v. *Finnies*, 5 Eng. Com. Law R., 82. Where an executor was ruled to give security for costs. 1 Tidd's Pr. 534.

There is a misjoinder of counts, the fourth count being in covenant.

Misjoinder is not cured by verdict, (3 U. S. Dig. 169, p. 897,) and may be assigned for error. 1 Ch. Pl. 236; *Cooper* v. *Bissell*, 16 Johns. 146.

Covenant cannot be joined with assumpsit. 1 Ch. Pl. 231. Different forms of action cannot be joined. 26 Wend. 30. In *Cobbet* v. *Packington*, 13 Eng. Com. Law. R. 170, one count was in assumpsit omitting the word "promised," the other in assumpsit: *Held*, a misjoinder. In *Orton* v. *Butler*, 18 do. 361, a count colorably in trover, but really in assumpsit, *held* misjoined with a count in case.

The facts stated in the fourth count show a case in covenant, and not in assumpsit, ( *Young* v. *Preston*, 2 Peters' Cond. R. 98,) holding that the plaintiff is hindered from performing his covenant he cannot recover in *assumpsit*. Same point, 2 Greenl. Ev. 80.

III. The contract set out in the fourth count, and given in evidence in this case, is a contract of partnership. For the distinctive features of partnership, see Story on Partn. 22, 37, 2, 6, 19, 22, 28, 37, 48, 49, 87; an ownership of stock is not necessary, p. 88, 89, 90; property, 127, 138; *delectus personæ*, 6; *Job* v. *Halsey*, 16 Johns. 39; *Goddard* v. *Pratt*, 16 Pick. 412, 414, 421, 428; *Holt* v. *Kernoddle*, 1 Iredell, 202; *Mills* v. *Hughes*, 1 A. K. Marsh. 181; *Cheen* v. *Bailey*, 29 Eng. Com. Law R. 276. One partner cannot maintain action for work against co-partner. *Holmes* v. *Higgins*, 8 do. 28.

IV. The first instruction asked should have been given. *Young* v. *Preston*, 2 Peters' Cond. R. 95. This instruction is copied from that approved in *Fresh* v. *Gibson*, 16 Peters, 327–8.

V. The second instruction should have been given. *Jennings* v. *Camp*, 13 Johns. 94.

Selby *v.* Hutchinson, adm'r.

VI. The other instructions should have been given. If there be a special contract, there can be no recovery on an *indebitatus assumpsit.* *Ellis* v. *Hamlen,* 3 Taunt. 52.

When *covenant* lies, *assumpsit* will not. *Baber* v. *Harris,* 36 Eng. Com. Law R. 793; 2 Greenl. Ev. 78, 104. If the contract is not put an end to, there can be no recovery on the common counts. 16 Wend. 636. If there be covenant to pay, *assumpsit* does not lie. *Miller* v. *Watson,* 4 Wend. 270, 275; *Reans* v. *Wallace,* 1 Port. 116. When payment is in land, count must be special. *Burlingame* v. *Burlingame,* 7 Cowen, 92. The work must be done. *Morford* v. *Mastin,* 3 J. J. Marsh. 689. If the pay be not money, the common count does not lie. *Pringle* v. *Samuel,* 1 Bibb, 172, 597; *Cochran* v. *Tatum,* 3 Monroe, 405; *Coursey* v. *Covington,* 5 Har. & Johns. 45; *Clarks* v. *Smith,* 14 Johns. 326.

VII. The instructions given were not proper. *Eldridge* v. *Rowe,* 2 Gilm. 96.

VIII. The new trial should have been granted, the verdict being against evidence and law. There was no such failure by Selby as would authorize Teed to rescind. *Fillent* v. *Armstrong,* 34 Eng. Com. Law R. 160. Where the object of the contract is not lost, there is no rescission. *Freeman* v. *Taylor,* 21 do. 250, 251. In *Franklin* v. *Miller,* 31 do. 148, "it is a clearly recognized principle, that if there is only a partial failure of performance by one party to a contract, for which there may be a compensation in damage, the contract is not put an end to." 1 U. S. Dig. 125, § 549.

A contract cannot be rescinded, unless rescinded *in toto,* and parties placed *in statu quo.* *Duht* v. *Silk,* 5 East. 451; *Potter* v. *Titcomb,* 22 Maine, (9 Shepley,) 300.

*J. Manning,* for the appellee.

I. The general rule is, that an administrator is not liable for costs. *Burnap* v. *Dennis,* 3 Scam. 481.

He who claims the benefit of an exception to a general rule, must affirmatively show himself entitled to it.

Therefore, he who seeks to make an administrator responsible for costs, must show the administrator's liability;

Selby *v.* Hutchinson, adm'r.

or if he ask security against such liability in *futuro*, he must show the danger of such liability's arising. For if there is no danger of liability, such security cannot be required. *People* v. *Pierce*, 1 Gilm. 553.

Admit, then, that an administrator may in certain cases be held to security for cost; yet, in this case, the defendant below did not show one of those cases by his affidavit, and on that affidavit could not require such security.

II. It is argued on the authority of 5 Eng. Com. Law R. 82, and 1 Tidd's Practice, 534, that an administrator may be held to security for costs; but there the executor was a non-resident of the territorial jurisdiction of the Court; here, the administrator is not shown to be within the facts, and of course not within that rule.

In all cases where an administrator can be made liable for costs, his securities in his administrator's bond will also be liable; ( Stat. 557, as to form of bond;) so that he has once given security for all his possible liabilities, and is not to be required to do so again.

III. But if the administrator may, in the manner proposed, be required to give security for costs, under what law may he be required so to do?

If not by virtue of the statute, then necessarily it is discretionary with the Court to require or not require, and the judgment of the Court in regard to it, is not assignable for error, though erroneous.

If, by virtue of the statute, it can only be under this portion of it. And here also, it is in discretion of the Court to require or not require it, as much as the ability of a party to pay costs. *Gesford* v. *Critzer*, 2 Gilm. 698.

But the affidavit is not set out in the bill of exceptions, and the Court cannot notice it; therefore, the administrator is not shown to be liable in any manner to give security for costs.

IV. As to the misjoinder.

1. The fourth Court though special, is in *assumpsit*. It claims to recover only because the contract mentioned in the count is rescinded; whereby, the defendant became liable, and promised to pay the value af the work done.

2. Suppose a bond for payment of money at three per cent. In consideration of extension of time, promise to pay with six per cent; *assumpsit* brought, and the bond set out as inducement; is the action on the bond?

V. As to the alleged partnership.

1. The cases cited are of questions concerning what constitutes a partnership as to third persons.

2. There is not one as to the effect of a default to perform in preparing the partnership property.

3. In this case the party was to be remunerated for his services specified, and advances by the title to an undivided one-fourth of certain property.

4. Suppose I make an entire contract to erect a store on another's land—he to advance $5000 to purchase goods, out of the one-half profits of which I am to be paid; I build the house and he advances nothing—am I without remedy? Equity cannot take an account—there are no accounts. May I not as in other cases declare the entire contract rescinded and recover the value of work?

5. But in the same case, suppose he is to furnish the materials so that I cannot proceed, may I not, as in other cases, recover the value of my services?

6. What, as between the parties, is there to distinguish a contract to pay for services in the profits of a partnership, from one to pay in property?

7. But a partnership may be dissolved at the option of any one partner. Story on Part. 386, § 269; 395, § 275. If so, much more in this case than others may one party, before the contract to form the partnership is fulfilled, rescind such contract for the default of the other party.

8. But there is no evidence that Teed received any of the profits; on the contrary, the jury have found that Selby prevented him from proceeding with the work.

9. It will not be contended but that if Selby had entirely failed, and prevented Teed from proceeding, Teed might have maintained an action at law on the contract. Now there is no case where this can be done, but that the party not in default being so prevented, may, on that account

treat the contract as rescinded, and recover the value of his services.

10. This is now a question of fact passed on by the jury.

11. The plaintiff prevented Teed from entering on the partnership—would not let him share profits. Nelson Selby's evidence. A jury may believe part, and disbelieve part of a witness's evidence.

VI. As to the issue on sixth plea, and first instruction.

1. The issue is, whether the contract is rescinded as stated in the replication.

2. The "but the contract was in full force at the time the work was performed," is mere surplusage, it being re-stating what was admitted by not being traversed in the replication.

3. If the issue on this point is an immaterial issue raised by Selby, and 1. if it were found for defendant below, the plaintiff would have been entitled to judgment *non obstante veredicto;* 2. therefore, the Court was not called on to notice it in the instructions.

4. But if the rejoinder be issuable in both members, then the *similiter* raised two questions: 1. whether the contract was in force when the work was done; 2. whether the contract was rescinded as alleged in the replication; and 3. the instruction only covers one of these, and therefore it was properly refused.

5. But misjoinder may be taken advantage of on demurrer. 1 Chit. Pl. 235–6, and after judgment on demurrer, there can be no motion in arrest for causes which might have been determined on demurrer. 2 Tidd's Prac. 917–18; *Edwards* v. *Blunt,* 1 Strange, 425; *Creswell* v. *Packham,* 1 Eng. Com. Law R. 503; *Rouse* v. *Peoria Co.,* 2 Gilm. 99.

VII. As to the instructions.

1. The instruction asked was not law, for work done under such a contract, may be recovered for in such action. 2 Scam. 410.

2. The second is either unintelligible, or it is not law. It means that the jury shall find the value of the work done under the contract, in favor of the defendant, or it means nothing; then it is not law.

3. The third is not law, because there is evidence of other work than that done under the contract; and though the jury find that the plaintiff is entitled to nothing for the work done under the contract, it does not follow that they should find for the defendant generally.

4. The same remark applies to the fourth instruction prayed.

5. Same, and irrelevant for there is no evidence tending to show that Teed abandoned the job.

6. The sixth instruction is no law; the statute commences running from the time that the right of action accrued; no such right had accrued October 29th, 1840.

7. The word "prevented" is too general, and calculated to mislead the jury, and the plaintiff might recover for other work, not done under the contract; and there was evidence tending to show a "preventive" of the administrator, therefore the instruction as asked, did not meet the whole facts of the case; the Court could not say the contract was not rescinded unless Teed was "prevented."

8. This is too general, and does not notice the "prevention," of the administrator. But this was before the law prohibiting a Judge giving instructions.

Admit that these instructions as prayed are all law, yet the Judge gave the law substantially as prayed. *State* v. *Wilson*, 2 Scam. 226; *Bland* v. *People*, 3 do. 366; *Hays* v. *Borders*, 1 Gilm. 46.

VIII. As to the law governing the case.

Where there there has been a contract, whether under seal or not, and it is partially performed by one party, and he is prevented from completing the performance by the default of the other party, he may treat the contract as rescinded, and recover for the value of what he has done. *Butts* v. *Huntly*, 1 Scam. 410; *Herrington* v. *Hubbard*, Ib. 569; *Reed* v. *Phillips*, 4 do. 40; *Bannister* v. *Reed*, 1 Gilm. 100; *Lenningdale* v. *Livingston*, 10 Johns. 36; *Dubois* v. *The Delaware & Hudson Canal Company*, 4 Wend. 290; *Britton* v. *Turner*, 6 New Hamp. 481.

IX. Where substantial justice has been done, a new trial

will not be granted. *Greenup* v. *Stoker*, 3 Gilm. 216; *Gillett* v. *Sweat*, 1 do. 475.

Where a new trial is granted, on the ground that the verdict is against the weight of evidence; that weight must be overwhelming. 2 Gilm. 294, *et passim*.

The Opinion of the Court was delivered by

KOERNER, J.* This cause was tried in the Circuit Court of Knox county, at the November term A. D. 1846, and a verdict was found by a jury in favor of Hutchinson, administrator of Teed, the plaintiff below, for $462·50. The Court overruled a motion for a new trial, and rendered judgment for said amount, in favor of plaintiff, from which judgment the defendant, Selby, has appealed.

The errors assigned upon this record are very numerous indeed; but we do not deem it necessary to consider them all, as many of them involve no principles of importance, and as a decision of all of them is rendered unnecessary by the disposition which the Court has made of the case.

The first error assigned, which we feel inclined to notice, is, that the Court overruled a motion made by Selby's counsel for security for costs, founded upon an affidavit showing the insolvency as well of the plaintiff, the administrator, as of the estate of Teed itself. The affidavit of the defendant not being embodied in the bill of exceptions, and the record nowhere showing that the opinion of the Court, in overruling said motion, was excepted to, this objection is not properly before us for adjudication. We are, however, of opinion, that inasmuch as the Court is not directed by the statute to grant such a motion unless it be satisfied that the plaintiff is unable to pay the costs, the decisions of the Judge in relation to motions of this character, cannot be assigned for error. This has been so held in *Gesford* v. *Critzer*, 2 Gilm. 699. It is, moreover, a general rule, that an administrator is not personally liable for costs. See *Burnap* v. *Dennis*, 3 Scam.

* WILSON, C. J. did not sit in this case.

478, and nothing is shown here by the defendant to take the plaintiff out of the operation of this general rule.

The assignment of the second error presents the question whether there was a misjoinder of counts or not. The action is in *assumpsit*, and it is contended by the counsel for appellant that the fourth count in the declaration is substantially one in *covenant*, and should not have been joined with the other counts, which are all in *assumpsit*. A misjoinder of counts upon which the same judgment cannot be rendered, may be assigned for error, and is not cured by verdict. 16 Johns. 148. And hence this point is properly before us. In determining the question of a misjoinder, we have to be governed more by the form of the count, than by the substance contained it. Although a count may be held on demurrer to be defective in stating the cause of action, yet, if in its form it correspond with the other counts, to which it may have been joined, an objection to the whole declaration on account of misjoinder does not exist. Counsel have much relied on the case of *Orton* v. *Butler*, 16 Eng. Com. Law R. 361. But that case is one where a count intended to be one in *trover*, was joined with one in *trespass*, when in fact it had none of the characteristics of a count in *trover* in it, except the usual conclusions, and showed upon its face a clear cause of action in *assumpsit*. It is expressly said in that case by one of the Judges (p. 363,) that the count was not, in point of form, like one in *trover*. Now, in the present case, the fourth count alleges that the parties made a certain agreement in writing, under seal, reciting the same, and then avers that the plaintiff's intestate proceeded to comply with all the stipulations on his part, but that he was prevented by the defendant's failure to comply, from wholly doing and performing the said agreement, and that by reason thereof the said agreement became rescinded. It avers farther, that in consequence of this rescission, the defendant became liable to pay to said Teed as much as the work done by him was reasonably worth, &c., &c., concluding in the usual way by averring an *assumpsit* and refusal. There can be no doubt, that in point of form this is a count

in *assumpsit.* The sealed instrument is merely set out by way of inducement, a rescission of the contract is plainly alleged, restoring the parties to the condition in which they stood before making it, and from this original condition, the liability of the defendant to pay for the work a reasonable price is correctly deduced.

There was a separate demurrer to this fourth count, but as the defendant, after the demurrer was decided against him, pleaded over, the question whether a party can sue in *assumpsit* under a state of case as shown in said count, is not presented on the demurrer. The instructions, however, which the Court gave, and to the giving of which the defendant below objected, raise the same point, bringing the question properly before us. We are aware that Courts of very high authority have held, that a party must seek his remedy on his special contract alone, where he has performed work under said contract, and has been prevented by the act or default of the opposite party, to complete all he had un-undertaken to perform. The case in 16th of Peters, 319, however, to which our attention has been specially directed, does not go quite that far. The Court there decide no more than this, that where a deed is the foundation of the claim, and can still be regarded as subsisting and in full force between the parties, the action to enforce its provisions must be upon the instrument itself. This decision we are not disposed to question. It is different, however, where a manifest default on the part of one of the parties can be made to appear, amounting in law to the total rescission by him, and putting it in the power of the other party to rescind it on his part. This Court has repeatedly and uniformly decided, that in such a case a party may recover for work and labor done in *assumpsit.* We do not feel called upon to disturb the law now as settled in our State by a train of decisions. This Court have said in the case of *Butts* v. *Huntley,* 1 Scam. 413, "that where a written contract exists to perform a particular piece of work, and the workman performs part and is prevented from finishing it by the other party, he may treat the contract as rescinded, and recover the value of his

labor." This decision is sustained in *Herrington* v. *Hubbard*, 1 Scam. 569; *Reed* v. *Phillips*, 4 Scam. 40, and *Bannister* v. *Read*, 1 Gilm. 100; in which last case the authorities seem to have been carefully collected and reviewed. In addition, 10th Johns. 36, and 4 Wend. 290, may be cited as sustaining the view taken by the Supreme Court.

Another error assigned is, that by the contract set out in the fourth count, and given in evidence by the plaintiff, the parties became partners, and that consequently the plaintiff has mistaken his remedy. In this agreement, Teed covenants "to do the carpenter and mill-wright work appertaining to a flouring mill of four run of stone, in a good and workmanlike manner, to pay the defendant $50, to furnish money for the purchase of irons, glass, nails, bolting cloths, &c., which, with all other moneys advanced, was to be refunded with twelve per cent. interest from the completion of the mill, from defendant's share of the profits of said mill. Teed was to advance such further sums as he could command, and as should be necessary for the prosecution of the work, and was to advance the money for the payment of one Consel for hewing timber for the mill, one year from the date of the agreement. All money to become due Teed under the contract, was to remain unpaid until all debts then due by the defendant could be liquidated. The defendant, Selby, covenanted to furnish the hewn timber, sawed lumber, mill stones and other materials, to do the necessary digging, to board Teed and his hands, and to convey to Teed on the completion of the mill, one undivided fourth part of certain lands, and an undivided fourth part of the mill and appurtenances. Six months from the date of the contract, which was May 2d, 1840, Teed was to receive one fourth part of the profits arising from the saw mill on the lands to be conveyed, and one fourth part of the profits of the flouring mill, as soon as started, and no hand was to be employed without the consent of both parties."

Upon a careful examination of the terms of this agreement, and applying to them the general principles in relation to what constitutes a partnership, as between the parties them-

selves, *inter sese,* we are strongly inclined to the opinion that Teed and Selby did become partners by virtue of said instrument, at least from the time that Teed became entitled to the perception of the profits in the said two mills. It is, however, unnecessary to decide upon the character of this instrument, under the view which we take of this objection. It is now made for the first time, the record clearly showing that the defendant never made it in the Court below. As remarked before, the fourth count is not before us on demurrer, the defendant having waived any objections to it by pleading over. No motion was made to exclude this paper when offered by plaintiff, nor was the evidence demurred to as showing a state of facts destructive of the plaintiff's right to recover. The Court was not called upon in any manner whatever, to determine whether the contract created a partnership or not. On the contrary, it seems to have been the desire of the defendant's counsel to make it appear by the evidence, that Teed was not a partner of the defendant. Under these circumstances, we cannot allow him now the benefit of this objection. In a case precisely like the present, where it was insisted, in the Supreme Court of New York, that the action could not be sustained, as the plaintiff and defendant before the commencement of the suit had become partners in the subject matter, it was held "that it was too late to urge the objection now for the first time." *Smith* .v. *Allen,* 18 Johns. 247. We think that when the record satisfactorily shows, that the parties did not deem it proper to question certain of their respective rights in the Court below, they must be considered as having waived them, and cannot be permitted to dispute them here, in a Court of appeal, for the first time. If a different course were allowable, this Court in many cases, and in violation of the Constitution, would become a Court of original jurisdiction.

The last assignment of error goes to the overruling of the motion for a new trial, which was made by defendant, for the reason amongst others, that the verdict was against law and evidence; and the consideration of this assignment renders it necessary to advert to the evidence, which is very

voluminous indeed. The following facts, which bear particularly on the question of rescission, and are deemed important, and which have been extracted and condensed with some considerable care, appear to have been established by the evidence:

Teed, some time after the contract was made, employed hands and went to work on the frame of said flouring mill, and sometime in August 1840, he was ready to raise said frame, but he was delayed in doing so, the defendant, Selby, not having done the necessary digging. It was not before sometime in October that the frame was put up. Some of the materials, as some witnesses say, were not furnished quite as fast as they were needed. If they had been furnished in time, witnesses think that Teed would have probably procured hands and finished the job sooner. Teed went on and put in the running work at first for two run of stones, and the mill was started. In summer of 1843, about three weeks before his death, Teed had prepared in part, the wheels for the running work for the remaining two runs of stones, and wanted timber to make the cogs for said wheels, which was not then furnished. The mill stones for the last two run were not furnished before Teed's death. Some of the plaintiff's witnesses are of opinion, that if the materials had all been properly on hand, the grist mill might have been completed before Teed died. Some time after Teed's death, his administrator, a physician, offered to complete the contract entered into by his intestate, which defendant declined, unless he would first take out the running work put in by Teed, as it was not well done, and of no use, and put in other work. It is shown by the testimony of several wheelwrights that the running work put in by Teed was really very defective, not worth the material, and that it had to be taken out and had to be replaced by a new one. The delay in digging is explained by several witnesses, as arising from the fact that Teed had to direct it, or to lay it out, and that he failed to do so; that at one time when the digging should have been done, he was absent for upwards of a week. Teed, while he was at work at Selby's mill, was engaged in building two or

more mills for other people. The defendant, Selby, complained often to Teed about the work not being well done, and also heard Selby complain that he, Teed, had failed to give directions as to the digging. Teed was never heard to complain about Selby's delay. If full credence were to be given to one of defendant's witnesses, it would appear that in several instances, the materials were ready a year before Teed made use of them, and that at one time, he did not work at all for six months; and also that when Teed asked for the timber to make the wheels for the remaining two run of stones, he was required to point out what kind of timber he wanted, which he promised but failed to do. The witness, for reasons apparent on the record, is, however, not entitled to full credit, but in so far as his testimony is supported by others, and this is really the case with the greater portion of his statements, it cannot be rejected. All witnesses who are asked the question, testify that Teed, up to the time of his death, claimed that the contract was in force. It does not appear that Teed furnished the $50·00, which he was to have furnished, nor any other sums of money, save what he had made out of the profits of the grist mill, and what he had paid to Consel. Several witnesses say that if Teed had worked steadily, the whole work might have been performed before he died.

Upon this testimony, the jury below found a verdict for plaintiff, or in other words, they found that the contract heretofore existing, had become totally rescinded by the default or neglect of the defendant, Selby, as to himself, and that Teed, having done every thing on his part to be performed, became entitled to treat it as rescinded.

Now, we are of opinion that in this the jury were most obviously and manifestly mistaken. If the evidence show any default at all on defendant's part, it shows one so slight in its nature, that no rescission can be founded upon it, for it is not every partial neglect or refusal to comply with some of the terms of the contract by one party, which will entitle the other to abandon at once the special and solemn obligation entered into by the parties, and by which they had made

for themslves the law which was to control them. In order to justify an abandonment of the contract, and of the proper remedy growing out of it, the failure of the opposite party must be a total one; the object of the contract must have been defeated, or rendered unattainable by his misconduct or default. For partial derelictions, and non-compliances in matters not necessarily of first importance to the accomplishment of the object of the contract, the party injured must still seek his remedy upon the stipulations of the contract itself.

The most that can be said of Selby's conduct is, that he was somewhat dilatory in preparing the digging, and furnishing materials. But it was at last all furnished, with the exception of some timber which was asked for a short time before Teed died. There was no necessity for furnishing the two last mill stones, as the running work for them was not yet prepared when Teed died. Much of the defendant's testimony contradicts the fact that there was any delay; but as the jury had a right to determine the contradictory evidence in favor of the plaintiff, we, of course, do attach no weight to these denials here. It is clearly established, however, by the proof, that Teed was equally dilatory—that he did not work steadily, and that some of Selby's delay was in fact caused by Teed's own negligence and carelessness. But even if Selby's default had been one of greater magnitude, and one which could have been clearly charged upon him alone, it is manifest from the evidence that Teed waived all objections on that score, and proceeded with the work until very shortly before his death. If, then, he had any cause to abandon the contract at any time while he was progressing with his work, it is evident that he has not chosen to do so, but by going on after the existence of such cause, he has affirmed, in the most unequivocal manner, the continued subsistence of the contract.

As for the offer of the administrator to complete the contract, and the refusal of Selby, it is only necessary to say, without deciding any other point which might be presented by this peculiar state of facts, that the refusal of Selby was

qualified by his stating, that he would allow such completion, provided the defective work was first taken out, and other put in place of it. This we think he had a right to demand, and it does not appear that the administrator assented to this proposal.

The motion for a new trial, for the reason that the jury found against the law and the evidence, ought to have been allowed by the Court below. For this error, judgment must be reversed at the costs of the appellee, to be paid by him in due course of administration, and the cause is remanded for a new trial, and such further proceedings as to law and justice may appertain.

*Judgment reversed.*