MILLER, Respondent, vs. PALMER, Appellant.

*February 26 — March 16, 1897.*

*Rescission of contract: Conversion.*

A debtor who, to secure his sureties in a bond to his creditor, has given them a bill of sale of the property bought from such creditor, they agreeing to take proper care of the property, dispose of it to the best advantage, and collect his accounts, and, after paying expenses, pay the balance to the creditor until he is fully paid, and return the remainder, if any, to the debtor, cannot, after such sureties have paid over a part of the proceeds of the property to the creditor, rescind the contract and revest the title of the property in himself by demanding a return thereof, because of the refusal of such sureties to pay over the balance to the creditor; nor can he, after making such demand, maintain an action against them for the conversion of the property.

Miller vs. Palmer.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Reversed*.

In May, 1893, the plaintiff was engaged in the business of selling sewing machines, at Duluth, Minnesota. He was handling the machines manufactured by the White Sewing-Machine Company. He, as principal, and the defendant with others, as sureties, executed to the White Sewing-Machine Company a bond in the penal sum of $3,000, conditioned to pay to the obligee, or its assigns, "any and every indebtedness or liability now existing or which may hereafter exist or be incurred by the said *Miller*." After the execution of this bond, the plaintiff bought sewing machines and supplies from the White Sewing-Machine Company, whereby he incurred a large indebtedness. He became embarrassed in his business, and was unable to meet his payments. The company pressed him, and demanded payment from his sureties. In these circumstances he voluntarily turned over to his sureties a considerable amount of property, consisting of sewing machines, sewing-machine supplies, and accounts, by an absolute bill of sale. They gave him a receipt therefor, expressing that they would take proper care of the property, and dispose of it to the best advantage, and collect the accounts, and, after paying expenses, pay the balance to the White Sewing-Machine Company until it was fully paid, and the balance, if any, to the plaintiff. Some of the accounts were collected, and some of the machines were sold. Of the moneys realized, some was used for paying expenses, some was paid to the White Sewing-Machine Company, some was on hand. An action on the bond was pending in the courts of Minnesota against the plaintiff and all his sureties. All the defendants in that action were defending. The plaintiff, believing that the defendant, who was in possession of the property, intended to hold it to indemnify himself and the other sureties against the costs and expenses of that action, instead of paying the

obligation with it, demanded a return of the property, saying that he would settle with the company. The defendant refused to surrender, and the plaintiff brought this action as for a conversion of the goods. The plaintiff had judgment, from which this appeal is taken.

For the appellant there was a brief by *A. C. Titus*, attorney, and *C. T. Crandall*, of counsel, and oral argument by *T. L. McIntosh*.

For the respondent there was a brief by *A. B. Ross* and *L. T. Powell*, and oral argument by *Mr. Ross*. They contended that the repudiation of the agreement by the appellant justified a rescission thereof by the respondent. *Keys v. Harwood*, 2 C. B. 905; *Shaw v. Turnpike Co.* 2 Pa. (P. & W.), 454; 2 Parsons, Contracts, 679. The demand for a return of the property amounted to a rescission on the part of the respondent. The appellant's holding the property for purposes inconsistent with the agreement and with the rights of the respondent was a conversion. *Nutter v. Varney*, 5 Atl. Rep. 457; *Hamilton v. McLaughlin*, 145 Mass. 20; *Haas v. Damon*, 9 Iowa, 589; Cooley, Torts, 448.

NEWMAN, J. In order to recover in an action for the conversion of goods, the plaintiff must have the title, general or special, of the goods, and the right of immediate possession. 26 Am. & Eng. Ency. of Law, 744. Whether the transaction by which the goods came to the possession of the defendant be considered the creation of a trust to apply the proceeds of the goods and accounts to the payment of the plaintiff's debt to the sewing-machine company, or a mortgage for the security and indemnity of the sureties on his bond, it transferred the title to the goods. *Hill v. Merriman*, 72 Wis. 483. The transaction evidently included both purposes. The title would, in ordinary cases, remain in the grantee or mortgagee until the purpose contemplated had been fulfilled. It is not easy to see how the plaintiff

has become reinvested with the title. The purpose has not yet been fulfilled. His mere demand could not revoke the title. If the transaction be held to create a trust, still the trustee has a beneficial interest to be protected. If he failed to execute the trust or misapplied the fund, it would seem that the remedy would be in equity to compel its execution. But it is understood that it is claimed that the plaintiff's demand for a return of the goods worked a rescission of the transaction, and revested the title to the goods in him. No doubt it might have this effect if he was, in the circumstances, entitled to make compulsory rescission. Ordinarily, it requires the consent of both parties to rescind a contract, as well as to make one. But there are some exceptions. If the contract has been procured by the fraud of one party, the other party may rescind the contract on discovery of the fraud, by giving prompt notice of rescission, or the institution of an action. The only fraud hinted at is the failure to apply the fund to the purposes intended. If this was in pursuance of a preconceived intention not to apply the fund to the purpose, it is a fraud which might justify a rescission. But, in order to have that effect, the fraudulent intent must have existed at the time of the making of the contract (*King v. Brown*, 24 Ill. App. 579; *Bidault v. Wales*, 20 Mo. 546), and is not proved by the fact alone of nonperformance (*Patterson v. Wright*, 64 Wis. 289). So, also, the nonperformance of the contract by one party will, in some circumstances, afford ground for its rescission. The more common case is where the nonperformance by one party disables the other party to perform on his part. In that case the party disabled is excused from performance on his part, and may, at his option, treat the contract as rescinded. But this option does not arise where the failure to perform is only partial, and there remains a distinct part of a subsisting and executed consideration. In such a case the remedy of the injured party is by an action on the contract itself. *Selby v.*

*Hutchinson,* 9 Ill. 319–333; *Weintz v. Hafner,* 78 Ill. 27; *Burge v. C. R. & M. R. Co.* 32 Iowa, 101; *Myer v. Wheeler,* 65 Iowa, 390; *Stevenson v. Polk,* 71 Iowa, 278; 2 Parsons, Cont. 679; 21 Am. & Eng. Ency. of Law, 46.

The defendant has partly performed his undertaking. He is still liable as a surety on the plaintiff's bond. That is, in part, the executed consideration upon which the transfer of the goods was made. An action on the contract, if there is a breach of it, will afford the plaintiff complete relief. So it is held that his demand for the return of the goods did not operate as a rescission of the contract, so as to revest the title in the plaintiff; and that the plaintiff has no sufficient title to maintain his action as for a conversion of the goods.

*By the Court.*— The judgment of the superior court of Douglas county is reversed, and the cause remanded for a new trial.