HOLLEB LIQUOR DISTRIBUTORS, INC., Respondent, vs. LINCOLN FIREPROOF WAREHOUSE COMPANY, Appellant.

*November 11—December 8, 1936.*

For the appellant there were briefs by *Gold & McCann* of Milwaukee, and oral argument by *Ray T. McCann.*

*H. M. Seidelman* and *A. W. Richter,* both of Milwaukee, for the respondent.

FRITZ, J. In this action to recover damages for conversion of ten cases of liquor, the plaintiff, an Illinois corporation, alleged in its complaint that on September 18, 1934, the defendant, Lincoln Fireproof Warehouse Company, had in its warehouse six hundred fifty cases of liquor which had been consigned to the New Era Products Company (subsequently interpleaded as a defendant herein upon the defendant's cross complaint); that on September 18, 1934, the interpleaded defendant sold the liquor to the plaintiff, and in writing assigned all its rights, title, and interest therein to the latter; that upon plaintiff's delivery of that assignment to the Warehouse Company, it acknowledged receipt and acceptance thereof, and knew that the plaintiff owned and was entitled to the delivery of the liquor, but that on October 10, 1934, it refused the delivery of ten cases thereof on the plaintiff's demand.

As a first defense the Warehouse Company alleged in its answer that the plaintiff, as an Illinois corporation, could not maintain this action for the reason that at the times of the transactions in relation to its alleged purchase of the liquor, it was not licensed to transact business in Wisconsin because it had not complied with the provisions in ch. 226, Stats. Additional facts were alleged in the pleadings filed by the Warehouse Company and the interpleaded defendant as bases for other defenses in denial of plaintiff's ownership and right to the liquor in suit. However, it is unnecessary to now

state or consider those other defenses, if the plaintiff's rights to such ownership or possession depend wholly upon a contract which was made in this state by it in relation to the purchase of liquor that was not an article of interstate commerce, at a time when the plaintiff was not licensed to do business here because it had not complied with the provisions of sec. 226.02, Stats. 1933. As is provided in sub. (9) of that section,—

"Every contract made by or on behalf of any such foreign corporations, affecting its liability or relating to property within this state, before it shall have complied with the provisions of this section, shall be void on its behalf and on behalf of its assigns, but shall be enforcible against it or them."

In view of that provision all contracts made in this state by an unlicensed foreign corporation in relation to property which is within the state are absolutely null and void, and the title to such property does not pass to or vest in the vendee, but remains in the vendor. *Wisconsin Trust Co. v. Munday,* 168 Wis. 31, 168 N. W. 393, 169 N. W. 612; *Hanna v. Kelsey Realty Co.* 145 Wis. 276, 129 N. W. 1080; *Phœnix Nursery Co. v. Trostel,* 166 Wis. 215, 164 N. W. 995; *Indiana Road Machine Co. v. Lake,* 149 Wis. 541, 136 N. W. 178; *Ashland Lumber Co. v. Detroit Salt Co.* 114 Wis. 66, 89 N. W. 904; *Allen v. Milwaukee,* 128 Wis. 678, 106 N. W. 1099; *Southwestern Slate Co. v. Stephens,* 139 Wis. 616, 120 N. W. 408; *Roeder v. Robertson,* 202 Mo. 522, 100 S. W. 1086. The decision in *Buckingham Radio Corp. v. Persion F. Co.* 191 Wis. 391, 211 N. W. 269 (which is relied upon by the plaintiff), is not in conflict with that rule because in that case the unlicensed foreign corporation's title and right to possession of the property which it replevined were not based upon a contract made in violation of sec. 226.02, Stats. Instead they had been validly acquired and became vested in it before that contract was made with

the defendant, who was attempting to retain possession of property to which the latter had not acquired title. In view of those facts, the court said, "When an unlicensed foreign corporation has the title and the right to the possession of property situated in Wisconsin it may maintain replevin to recover the same."

The established rule in this state is that, "In order to recover in an action for the conversion of goods, the plaintiff must have the title, general or special, of the goods, and the right of immediate possession." *Miller v. Palmer*, 95 Wis. 526, 528, 70 N. W. 659. See also *Stanton v. Kirsch*, 6 Wis. *338; *Huddleston v. Johnson*, 71 Wis. 336, 37 N. W. 407; *Russell T. Co. v. Kenfield-Lamoreaux Co.* 165 Wis. 136, 161 N. W. 358. Consequently, if the plaintiff's acquisition of the title and right of possession to the ten cases of liquor in suit depends upon a contract which is void under sec. 226.02 (9), Stats., then it cannot recover.

On the trial the evidence conclusively established that the plaintiff had never been licensed under sec. 226.02, Stats., to transact business in this state, and the civil court duly made a finding to that effect. But, in holding that the plaintiff was not entitled to recover, that court apparently based its conclusion upon other findings to the effect that the interpleaded defendant was entitled to the delivery of the ten cases of liquor, and that, therefore, such delivery was not a conversion thereof. Those other findings and the civil court's judgment based thereon were reversed by the circuit court, which found and concluded,—without passing upon the validity of the contract upon which plaintiff relied notwithstanding its noncompliance with sec. 226.02, Stats.,—that the plaintiff was the owner and entitled to the possession of the liquor, and the recovery of damages for the conversion thereof.

The facts in respect to the plaintiff's alleged ownership and right to possession of the liquor and the status thereof

as an object of either interstate or intrastate commerce, at the time of the plaintiff's alleged acquisition thereof, are as follows: The ten cases were originally part of a carload of one thousand twenty-five cases which the American Medicinal Spirits Company shipped by rail from Louisville, Kentucky, to Milwaukee, under a freight receipt consigning the shipment to the order of itself as consignee with a notation on the receipt "Ntfy New Era Prod. Co. c/o Lincoln Whse." The shipment arrived at the latter's warehouse in Milwaukee about September 15, 1934, and the freight receipt with a draft attached for the balance to which the American Medicinal Spirits Company was entitled on account of the purchase price was sent to the Badger State Bank at Milwaukee. The amount of that draft was paid to that bank by the interpleaded defendant with its check which it drew against its credits in its checking account at that bank. Those credits were in part the proceeds of a loan of $21,000, which the interpleaded defendant obtained from the bank, and to secure which it was given a nonnegotiable warehouse receipt, issued by the Warehouse Company on September 15, 1934. That receipt stated that the "Badger State Bank for the Account of the New Era Prod. Company, deposited with" the Warehouse Company six hundred fifty cases of liquor, "Delivered direct from car no storage charges. Subject to withdrawal against authorized orders, to be delivered to said depositor upon surrender hereof and receipted for in writing, and upon payment of all our charges for the payment of which warehouseman's lien is claimed. . . ." The six hundred fifty cases described in that receipt were part of the carload shipment, and they had been unloaded and deposited in the defendant's warehouse for storage for the account of the interpleaded defendant, as stated in that receipt. The other three hundred seventy-five cases, which were in that shipment, had apparently been unloaded from the car at Milwaukee onto

motor trucks on which the plaintiff had them hauled to Chicago. There is no controversy in respect to them, and the record does not disclose definitely the transactions or conditions under which the plaintiff became entitled to their delivery. However, it does appear that in July, 1934, the interpleaded defendant, at Milwaukee, gave its order for the one thousand twenty-five cases of liquor to a representative of the American Medicinal Spirits Company, and then paid to that representative a deposit of $5 on each case and a guarantee of $1; and that that purchase was made by that defendant with the understanding that it was not to resell that liquor as a wholesale dealer for distribution elsewhere than in this state. Apparently, subsequent to its payment of those deposit and guarantee items, amounts equivalent thereto were received at Milwaukee by the interpleaded defendant from the plaintiff and at the latter's request that defendant in July, 1934, signed two statements prepared by the plaintiff. One of them purported to assign to the plaintiff the confirmation of the order placed for the liquor by the interpleaded defendant, and also to direct that if the liquor was not delivered the deposit of $5 per case was to be returned to the plaintiff for the undelivered cases. The other statement purported to be a notice which was addressed,—but never in fact was delivered,—to the American Medicinal Spirits Company, and which stated that the $5 per case deposit and the $1 guarantee given to the latter's representative were the property of the plaintiff "who have purchased the liquor confirmed in your letter of July 25th."

The ten cases of liquor, for the conversion of which plaintiff seeks to recover damages, were part of the six hundred fifty cases, which were unloaded from the car and then deposited in the defendant's warehouse on September 15, 1934, by the "Badger State Bank for the account of the New Era Products Company;" and which, as the plaintiff alleged in

its complaint, were on September 18, 1934, in that warehouse and consigned to the interpleaded defendant. The evidence definitely and clearly establishes that on that date that defendant at Milwaukee executed and gave its written assignment for those six hundred fifty cases to the plaintiff pursuant to an agreement, in respect to which the plaintiff's president testified, "The agreement that was entered into with the New Era Products Company for the sale of liquor was made in Milwaukee." Thereafter up to October 1, 1934, the plaintiff made payments from time to time to the interpleaded defendant which the latter used in making payments to the Badger State Bank on account of the loan, which was secured by the pledged warehouse receipt, and the bank for such payments gave that defendant signed orders, which directed the Warehouse Company to release a specified number of cases of the liquor to that defendant. The latter gave those orders to the plaintiff who presented them at the defendant's warehouse, and in that manner obtained delivery of all of the liquor, excepting one hundred ninety-five cases, by October 1, 1934. On that date the plaintiff without the knowledge of the interpleaded defendant paid the balance which the latter owed on its $21,000 loan at the bank, and thereupon obtained a written order from the bank for the release of the one hundred ninety-five cases to the interpleaded defendant; and on that order the plaintiff obtained the delivery of one hundred eighty-five cases by the Warehouse Company, but it retained the remaining ten cases and subsequently delivered them to the interpleaded defendant.

Under those facts and circumstances the plaintiff certainly did not acquire any title or right of possession to the six hundred fifty cases deposited on September 15, 1934, in the defendant's warehouse at Milwaukee, until after the transportation thereof from Kentucky to Milwaukee had terminated, and they had been unloaded in this state from the

freight car and deposited on that date in that warehouse by the Badger State Bank of Milwaukee for the account of the interpleaded defendant as the property of the latter, subject only to the lien in favor of that bank. At that time they had ceased to be in transit and were no longer objects of interstate commerce. *Indiana Road Machine Co. v. Lake, supra*, p. 546, and cases there cited. Consequently, when the plaintiff thereafter on September 18, 1934, obtained in this state from the interpleaded defendant the latter's written assignment for those six hundred fifty cases, which had ceased to be objects of interstate commerce, the plaintiff's title and right of possession thereto were wholly dependent upon a contract which it had made in this state in relation to property therein, but which under the provisions of sub. (9) of sec. 226.02, Stats., was void and unenforceable by the plaintiff because of its failure, as a foreign corporation, to comply with the provisions of that section. Therefore it did not have the necessary title or right of possession to the property in suit to enable it to maintain this action; and its complaint must be dismissed.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in the circuit court dismissing the complaint.