## Case No. 16,179.

UNITED STATES v. The ROB ROY.

[1 Woods, 42; [1] 13 N. B. R. 235.]

Circuit Court, D. Louisiana. April Term, 1870.

FORFEITURES—REDELIVERY BOND—DISCHARGE IN BANKRUPTCY—FRAUD—DEBTS DUE UNITED STATES.

1. When a steamboat and her cargo of cotton were seized by the United States for con-

---

[1] [Reported by John William Wallace, Esq.]

[2] In point of fact it had been lost and had never been either filed or recorded.

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

demnation, and delivered to the claimant on his execution of a bond for the redelivery of the property, the amount of the judgment to be rendered in a suit on the bond would be the value of the property, estimated at the highest price that could be obtained for it, between the date of the bond and the date of the judgment.

2. The United States seized and filed a libel against a steamboat and cargo, as liable to forfeiture for violation of the rules of war. The claimant gave bond for the property, and made an unsuccessful defense against the libel, but set up *as a defense* to a judgment against him on the bond his discharge in bankruptcy. *Held*, that the debt evidenced by the bond was not created by fraud within the meaning of the thirty-third section of the bankrupt act [of 1867 (14 Stat. 533)], even though the claimant used the evidence of false witnesses, and swore falsely himself in making his defense.

3. When the claim evidenced by such bond was not reduced to judgment until after the adjudication of bankruptcy and the final dividend, *held*, that it was not provable against the bankrupt estate, and consequently was not barred by the bankruptcy.

4. A discharge in bankruptcy does not bar debts due the United States.

[Cited in Re Strassburger, Case No. 13,-526.]

In this case a decree had been rendered in favor of the government upon the libel, and the court was called on to pronounce judgment against the claimant and his sureties upon the bond executed by them for the redelivery of the property seized, to the United States. Upon this branch of the case several questions were raised which were disposed of in the following opinion.

A. B. Long, U. S. Atty., and J. S. Whitaker, for the United States.

J. A. Campbell, for respondents.

BRADLEY, Circuit Justice. In this case a decree has been rendered on the merits in favor of the United States, and judgment has been entered against the sureties for the several sums in which, by way of penalty, they were bound for the safe return by the claimant of the cotton which was delivered to him. The true amount due, and the true amount to be paid by each surety, will have to be ascertained by testimony as to the value of the cotton at the time it was bonded and at any time since. Having been taken out of the possession of the government, the latter is entitled to such amount as could, at any time since the delivery, have been obtained for the same.

A question still remaining to be decided is, whether the claimant, A. S. Mansfield, is or is not discharged from liability on the bond, by reason of his having received a discharge in bankruptcy. He has pleaded such discharge, dated June 30, 1860, purporting to be a discharge from all debts due by him which existed June 1, 1868, on which day the petition for his adjudication as a bankrupt was filed. The solution of this question depends upon that of one of two others: First. Is

the claim itself such an one as would be affected by a discharge in bankruptcy? Secondly. If it is, will a discharge in bankruptcy bind the United States?

1. Under the first head, it is claimed on the part of the government that this is a debt created by fraud and therefore not entitled to the benefit of a discharge under the bankrupt act. The government seized the steamer Rob Roy and her cargo as liable to forfeiture for acts done during the war. These acts were in violation of the rules of war, as adopted by the United States. The title of the government rested on such unlawful acts. The claimant, when the property was seized, came into court and undertook to defend the suit, and on giving a bond, which was then satisfactory, the property was delivered to him. Now, the appearance of the claimant in court, and his bonding the property, are the transactions on which the present claim is based. They cannot be regarded as fraudulent. Every person is entitled to come into the courts and prosecute and defend his suits in the ordinary way. The government proved the unlawful acts—the claimant failed to make good his defense. It is said that, in making his defense, the claimant used the evidence of false witnesses, and swore falsely himself. That, if true, was more than a fraud; it was a crime. But it is not a fraud by which this debt or obligation was created, and does not bring the case within that class of exceptions. In the next place, it is insisted that the claim was not provable in the proceedings in bankruptcy, and therefore was not subject to discharge. By the 34th section of the bankrupt act it is enacted, that a discharge duly granted shall, with certain exceptions referred to, release the bankrupt from all debts, claims, liabilities and demands, which were or might have been proved against his estate in bankruptcy. The 19th section declares what debts and claims shall be thus provable. A careful examination of the debts and claims here described will show that the claim in question was not one of them. To have been such, it must have been either—(1) a debt due and payable at the time of the adjudication of bankruptcy, or a debt then existing but not payable till a future day. It was neither of these. Or (2) a demand for goods wrongfully taken, converted or withheld. It was not this. Or (3) a liability as drawer, indorser, surety, bail, or guarantor on a bill, bond, note, specialty, or contract, or debt of another person. It was not this. Or (4) a contingent debt, or contingent liability, where the contingency happens before the order for final dividend, or where the present value of the debt or liability can be ascertained and liquidated. The contingency on which the liability in this case was depending was the final decision of the case, which could not be known, anticipated, or valued by any method of discount or any calculation of probabilities or chances whatever. That decision was not made till the present term of the court. It is

not shown when the final dividend of Mansfield's estate in bankruptcy was made; and consequently we can recognize its operation only upon claims which had become liquidated or fixed at the time of the adjudication of bankruptcy. The residue of the section is regulative of the claims already described; and it closes with the declaration, that no debts other than those thus specified shall be proved or allowed against the estate.

2. This decides the case, without making it necessary to examine the other question, whether the United States is affected by the discharge of its debtor in bankruptcy. On this point, the case of United States v. Davis [Case No. 14,929] is undoubtedly a precedent in favor of the validity and operation of a discharge, as against a debt due the government, being founded on a bankrupt act similar on this point to the present act. Were it not for that precedent, we should not hesitate to take a different view. There is nothing in the act itself which necessarily implies that a discharge under it was intended to operate upon claims of the government. The 33d section, which declares that no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in a fiduciary capacity, shall be discharged under the act, is not sufficient to raise an implication that debts due to government, other than those which arise by defalcation as a public officer, will be discharged. There are public officers of the several states, as well as public officers of the United States; and they are undoubtedly included in this phrase. Neither does the proviso at the end of the 28th section raise any such implication: "That nothing contained in this act shall interfere with the assessment and collection of taxes by the authority of the United States or any state." This proviso has the effect of preventing the assignee from interfering with the process for collecting such taxes. He cannot take the property out of the hands of the tax collector, or other tax officer, and cause them to wait till he is ready to pay over the taxes. He cannot interfere with them in any way. Other claims of the government are to be paid by the assignee out of the proceeds of the property, before he attempts to make any dividend to the creditors. Taxes are to be collected by the tax officers themselves. We do not think that either of these provisions affects the question before us. The general rule is, that the government is not bound by any law which would affect its rights, unless specially mentioned therein. This rule is so imperative as not to be displaced, we think, by any such ambiguous expressions as those which are relied on.

The point, so far as we are aware, having never been decided by the supreme court, we do not feel bound by the decision in U. S. v. Davis, supra, but are of opinion that the federal government is not bound by a discharge under the bankrupt act. The plea of bankruptcy is overruled, and judgment will be entered against Mansfield for the entire amount found to be due.

Since this case was decided, the United States supreme court has held that a discharge in bankruptcy does not discharge debts due the United States. See U. S. v. Herron, 20 Wall. [87 U. S.] 251.