## In re BLUMBERG.

### (District Court, E. D. Tennessee, S. D. 1899.)

**1. BANKRUPTCY—DEBTS AFFECTED BY DISCHARGE—JUDGMENTS IN ACTIONS FOR FRAUDS.**

Where, in an action for the price of goods sold, property in the possession of a third person was attached, on an allegation that it had been conveyed to him by the defendant in fraud of the latter's creditors, and such vendee, to obtain the release of the property attached, executed a replevin bond with sureties, and judgment was rendered against him, which the sureties were forced to pay, and he was then adjudged bankrupt, *held*, that the claim of such sureties against their principal, by subrogation to the rights of the original creditor, was not a "judgment in an action for fraud," within the meaning of Bankruptcy Act, § 17 (30 Stat. 550), providing that such judgments shall not be released by the bankrupt's discharge; the language of the statute referring only to judgments in actions where the fraud of the bankrupt is the ground of action and basis of the right of recovery.

**2. SAME—EFFECT ON PRIOR ATTACHMENT.**

While a discharge in bankruptcy releases the bankrupt from a provable debt which is not within the excepted classes, and takes away the creditor's right to proceed against him therefor in personam, it does not affect the lien of a valid attachment levied on the bankrupt's goods more than four months before the filing of the petition in bankruptcy

In Bankruptcy.

Specifications in opposition to the bankrupt's application for discharge were filed, as follows:

"Shapira & Dryzer, of Knoxville, in the county of Knox and state of Tennessee, parties interested in the estate of H. Blumberg, bankrupt, do hereby oppose the granting to him of a discharge from his debts, and for grounds for such opposition do file the following specifications: The debt of Shapira & Dryzer against said bankrupt is one which arose from the following circumstances: Two suits were brought in the chancery court of Loudon county, Tenn., by Hamburger Bros. and Adams & Beyer, two creditors of one Paletz, alleging that certain goods belonging to said Paletz had been secreted and concealed by the said bankrupt, H. Blumberg, and others, with the intention to cheat, wrong, and defraud said creditors of said Paletz. Under said bill the goods in the possession of said Blumberg and others were attached, and at the solicitation of said H. Blumberg, the firm of Shapira & Dryzer, as sureties, signed a replevin bond for said goods; and afterwards, on a decree being rendered against said Blumberg and others, they signed the appeal bond as sureties. The court of chancery appeals and the supreme court of Tennessee, in said causes, decreed that said bankrupt, H. Blumberg, and others, had committed a fraud in concealing said goods, etc., and entered a decree against them; the final decree in the supreme court being November 11, 1897. On this decree execution issued, and, on default of payment by said Blumberg and others, principals, said Shapira & Dryzer, as sureties, were forced to pay said decree, and are subrogated to the right of said original complainants in said cause. These creditors, therefore, represent to the court that said decrees are judgments obtained in actions for fraud, and are, therefore, such debts as are excepted from the operation of the bankrupt act, and are debts from which said bankrupt cannot be discharged. These creditors further show to the court that about February, 1898, they filed an attachment suit at Jasper, Tenn., against said Blumberg and others, upon said indebtedness, and attached certain property alleged to belong to said Bankrupt, H. Blumberg; that said attachment suit is now pending in the chancery court at Jasper, Tenn. They show that a discharge of said H. Blumberg might indirectly operate to affect the right of these creditors in said suit, as it might be pleaded therein by said bankrupt. Certified copies of the decrees of the court of chancery appeals and of the supreme court, and all other pertinent records, will be filed on or before

the hearing upon this matter. These creditors ask that a time be set at which these matters may be heard, and that it be decreed by the court that said bankrupt be not discharged from the payment of said debt, and for general relief."

The referee in bankruptcy to whom the case was referred found and reported as follows:

"This cause is before me upon an order of reference from the honorable C. D. Clark, Judge, based upon an application for discharge filed by the petitioner, Blumberg, and upon objections thereto filed by Shapira & Dryzer, of Knoxville, Tenn., creditors of said petitioner, together with an agreed statement as to proof, which said application and specifications of objections were set for hearing this date; the said reference directing me to report the facts, and whether or not petitioner is entitled to his discharge as to the debt of said creditor. There are two grounds of objection raised by said creditor to the application for discharge. The facts upon which said objections are predicated are all matters of record in the suits referred to, and will be briefly noticed as to the first ground:

"On Oct. 19, 1894, Hamburger Bros., a mercantile firm of Cincinnati, Ohio, filed a bill in the chancery court of Loudon county, Tenn., against L. Paletz, I. Gary, and H. Blumberg, to collect an account of $516.99, for a bill of goods sold L. Paletz, who, when the goods were sold him, was a merchant doing business in Dayton, Rhea county, Tenn., while I. Gary and H. Blumberg, the petitioner in the application for discharge, were at the same time conducting business in Loudon, Tenn., under the name of Blumberg Dry-Goods Company and I. Gary. It is alleged in the bill that Paletz had fraudulently disposed of his property to defraud and defeat his creditors; that he owned certain goods, wares, merchandise, then in the county of Loudon, and that defendants, I. Gary and Blumberg Dry-Goods Company, were fraudulently concealing and covering up this property of Paletz to keep it out of the reach of creditors; that said Blumberg Dry-Goods Company and Gary had in their possession a small stock of goods in Loudon county, the most, if not all, of which was the property of Paletz; and that said defendants and Paletz had colluded and conspired together to cheat and defraud complainants, and to fraudulently conceal some of the property of Paletz. An attachment was asked for, based upon these charges, which was issued and levied upon the goods then in possession of the Blumberg Dry-Goods Company and I. Gary, who subsequently replevined the goods, giving bond in double the amount of the debt sued for, conditioned to pay the debt, interest, and costs, if cast in this suit; said creditors, Shapira & Dryzer, becoming sureties thereon. Said Gary and H. Blumberg each filed separate answers to the bill, denying all material allegations. After proof taken, the cause was heard by the chancellor, November 16, 1896, and a decree rendered for complainants against defendants and said sureties on their replevin bond, to wit, Shapira & Dryzer, for the amount sued on and interest, amounting to $580.50. From this decree I. Gary and H. Blumberg, composing the firm of Blumberg Dry-Goods Company, and I. Gary, individually, prayed an appeal to the supreme court of Tennessee; said creditors, Shapira & Dryzer, becoming also surety on their appeal bond. This cause, upon appeal, was heard by the court of chancery appeals May 29, 1897; the opinion of said court, fully setting out the above facts, being reported in 42 S. W. 807, from which it appears that the decree of the chancellor was sustained in all respects, and decree rendered against the appellants and said Shapira & Dryzer, sureties, on appeal, for the amount due complainants, with interest and costs. This decree was also appealed from, but affirmed by the supreme court of Tennessee, in an oral opinion rendered November 6, 1897, and said creditors, Shapira & Dryzer, as sureties aforesaid, paid the full amount thereof, as appears from reference to the certified copy of the execution issued thereon, filed with me upon the hearing of this application. By reference to the opinion of the court of chancery appeals, it appears that they were unable to resist the conclusion 'that Paletz, doing business at Dayton, something like a month before his failure, determined to put as many of his goods as possible beyond the reach of his creditors, and that these appellants (I. Gary and H. Blumberg) entered into his fraudulent scheme to assist him in carrying it out.' That this decree, as

contended for by Shapira & Dryzer, in the specifications above set out, constitutes a 'judgment in an action for fraud,' within the provisions of subsection 2, § 17, of the bankruptcy act, which excepts such judgments from the operation of a discharge in bankruptcy, I have no doubt, and so hold; and the language of the court of chancery appeals, above quoted, clearly implicates the petitioner, H. Blumberg, as particeps criminis to such fraud. I am, therefore, of opinion that this first ground of objection to the discharge prayed for is well taken, in so far as its operation upon the debt due said objecting creditors is concerned, and, being of this opinion, it becomes unnecessary to determine the second ground of objection raised by the specifications.

"Counsel for the petitioner, H. Blumberg, offered testimony aliunde the record in the case heretofore referred to, for the purpose of showing (1) certain facts not disclosed in the record, but touching the same transaction; (2) to show that these objecting creditors, Shapira & Dryzer, had full knowledge, at the time of signing said replevin bond and appeal bond, of the facts upon which said decree was afterwards predicated; (3) that said replevined goods, after the execution of the replevin bond, were delivered to Shapira & Dryzer, and sold by them, and proceeds converted to their own use. I see no force in either of these contentions. I decline to consider any evidence of fraud outside the record in the case upon which the judgment for fraud is predicated, because, in my opinion, I am concluded thereby; said judgment being rendered by a court of competent jurisdiction, and all the parties being properly before it. Neither do I regard the evidence offered to show the knowledge of Shapira & Dryzer at the time of signing the bond as material, for several reasons: (1) Because they signed at the request of the petitioner; (2) because they were in no way implicated in the fraud in this record; (3) their right, as creditors, to resist the discharge, arose out of their subrogation to the right of complainants, Hamburger Bros., by virtue of having, as sureties, paid off and discharged the judgment rendered in favor of Hamburger Bros., and even if estopped for any reason, on their own account, they may, by well settled principles, assert a right by subrogation which they could not maintain directly. See Motley v. Harris, 1 Lea, 577, where it is held that, 'where a surety attacks a trust assignment of his principal for fraud, the benefits of which are accepted by the creditors, and the assignment is sustained, the surety is not estopped by such action from the right of subrogation to the creditor, whose claim has been satisfied, for so much thereof as he may have paid.' As to the last evidence offered to show conversion by Shapira & Dryzer of the goods retaken under the replevin writ, it is sufficient to state that Shapira & Dryzer held a demand on Blumberg Dry-Goods Company and I. Gary, at the time of this conversion, for about $700, for goods sold them on their own account, which was independent of the demand growing out of their liability on this bond, and said conversion was prior to the adjudication of such liability. In addition to this, it does not appear that the value of the goods converted and sold exceeded the two debts aforesaid, nor was any objection raised by the petitioner, Blumberg, or his counsel, to the proof of claim filed by said creditor at the first creditors' meeting, in the presence of said Blumberg and said counsel, based upon this very demand. I therefore conclude that, under the facts properly presented, the petitioner, Blumberg, should not be discharged from the debt due said Shapira & Dryzer, but that the decree of discharge, when rendered, should contain a reservation to this effect.

"Counsel for Shapira & Dryzer have called my attention to the fact that they were also sureties upon the replevin and appeal bonds in the case of Adams & Beyer against Paletz and others, referred to in the specifications in opposition to discharge filed by them, and likewise paid the judgment rendered in that case, as appears from the certified copy of the execution before me. This Adams & Beyer case was brought against the same defendants, and involved precisely the same issues as the Hamburger Bros. litigation, and therefore, as to the amount paid by said Shapira & Dryzer in this case, to wit, $——, said discharge of petitioner, Blumberg, should likewise be inoperative.

"D. L. Grayson, Referee."

A. W. Gaines, for objecting creditors.
Creed F. Bates, for bankrupt.

CLARK, District Judge. For the purpose of this case, the debt due to the creditors of Paletz may be identified as the "original debt," and his creditors as the "original creditors," and the judgment on the replevin bond executed in the attachment suits in order to release the property may be called the "replevin bond judgment" or "replevin bond debt." In regard to the effect of a discharge in bankruptcy, the language of the bankruptcy act, so far as it affects the matter now under consideration, is:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as (1) are due as a tax levied by the United States, the state, county, district, or municipality in which he resides; (2) are judgments in actions for frauds, or obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another."

It is not to be doubted that the purpose of this statute is the same as a similar provision found in the former bankruptcy law, and that the word "fraud" means moral turpitude or intentional wrong, and that a part of the purpose of the statute was to discourage and punish such moral turpitude or intentional wrong. There is, of course, a difference in the phraseology between the former and the present statute; the former law designating the debt as one created by fraud or embezzlement, etc., while, as will be observed, the language of the present act is "judgments in actions for frauds," etc. Under the former bankruptcy law it was not, and could not be, doubted that the debt which could not be discharged was one based upon the fraud and the injury resulting from such fraud; the fraud itself being the foundation of the right and of the recovery, if a recovery was had. In my opinion, there is nothing in the present statute to warrant the conclusion that any different meaning is to be attached to the language used. The statute, besides specifying judgments in actions for frauds, also enumerates, in the disjunctive, judgments for willful and malicious injuries to the person or property of another, or for obtaining property by false pretenses or by false representations. The meaning in each one of the cases thus enumerated, and following each other, is exactly the same, and means a judgment based on a right or injury growing out of the fraud, false pretenses, false representations, or willful and malicious injuries to the person or property of another. It could not possibly, I think, have any application to a case where the judgment is not based upon the fraud as a ground of recovery, or a willful or malicious injury as a ground for recovery.

Take the case I am now dealing with: The judgment is not one in an action for fraud, and the recovery, in the original attachment suits, was based upon a bona fide account and an unquestioned debt, having no connection with any fraud, even suggested, in its original creation. The action was one to collect a bona fide debt, and, as an obstruction in the way of collecting such debt, the suit sought to set aside the conveyance or concealment of property. There was not, in these suits, any judgment rendered against any one which represented an injury done by any fraud. The judgment was for a perfectly just debt, and nothing more,

and incidentally, in the way of collecting that judgment, a sale of the property was set aside as fraudulent; but the judgment was in no wise based upon that fraud, but, as stated, was for, and represented exactly, the original account made with the creditors of Paletz; nor was there, nor could there be, anything connected with the replevin bond judgment which could be called a fraud. That was a statutory obligation, provided for in an attachment proceeding, by which a money obligation is substituted for property, in specie, in order to release the property to the claimant; and the judgment rendered on that bond was not on account of the fraudulent conveyance, but because the obligors on that bond had distinctly agreed that if the fraudulent sale should be set aside, and the property demanded for the purpose of satisfying the original debt, they would either return the property, pay its value, or pay the original debt. It was not open to the original creditors of Paletz, at any time, to assert that their debt was one in an action for fraud, in which the recovery would represent the injury done by a fraud. Their suit was one based upon a just debt, having its origin back · of any suggestion of fraud, in which there was sought the incidental relief of . setting aside a fraudulent conveyance. Such a fraudulent conveyance itself, under the law of the state, gave nobody a right to a money judgment in the first instance. It simply rendered the sale void, and enabled any creditor against whom it was declared void to have it set aside, just as if it never had been made, and to reach the property and subject it to a debt not created at all by the fraudulent conveyance, but created prior thereto, and to obstruct collection of which the fraudulent conveyance was made. If the fraudulent vendee had disposed of the property, so that a judgment might be rendered against him for the value of the property, such a judgment would be for the property, on the ground that, the fraudulent sale being void, it belonged to his fraudulent vendor, and that his disposition of it was a conversion.

I do not think that I need to elaborate further to make plain my view that, conceding that the creditors now objecting are substituted to the original debt due the creditors of Paletz, with all the rights, including the right to make any objection which the original creditors might have made, it seems ·to me quite clear that the objection to the discharge of the petitioner in this case is not well founded. The creditors of Paletz could not come, if their judgments had not been satisfied, and say that they had a judgment in an action for fraud. It would obviously be a complete answer to this to say that their judgment was based upon an account for goods sold and delivered, and that the judgment was based upon this right, and not upon any injury done to them by a fraud, or (if their case had been different) for obtaining any money by false pretense, or for willful or malicious injury to their person or property. The objection to the petitioner's discharge is not, in my opinion, well taken; and to so hold would be an entire misapplication of the purpose, as well as the very language, of the statute, upon any fair construction which must be given to

it. Willing as the court is at all times to punish persons for a contemptible fraud, this must only be done when it is reasonably clear that it is authorized by law.

In regard to the other ground of objection to this discharge, such an objection goes to the effect of the discharge, rather than to the right to such a discharge. It is doubtful, therefore, if I have the right, even by consent, to adjudge this question. It appears that the attachment suit pending at Jasper, Tenn., was brought during February, 1898, while the petition for discharge in this case was filed the 16th day of December, 1898. The statute, by clear language, does not affect any right acquired by a proceeding in rem, or partly in rem, at an earlier date than within four months next before filing the petition. So far as creditors of Blumberg may have acquired a lien upon property by attachment levied more than four months before the petition was filed, it is not affected by the discharge, and the right to proceed to subject any property validly attached by levy cannot be questioned; and, if the creditors can satisfy their debt in that method, their right to do so is clear, and is not in the least affected by this proceeding. It is only the debt, with the right to proceed against Blumberg in personam, that is discharged. Ordered accordingly.

Since writing the above I find U. S. v. Rob Roy, 1 Wood, 42, 27 Fed. Cas. 873 (No. 16,179), and Brown v. Broach, 52 Miss. 536, which seem to settle the question.