## GINSBERG v. INTERNATIONAL SHOE CO.
### (No. 10073.)

Court of Civil Appeals of Texas. Dallas. Oct. 29, 1927.

1. **Bankruptcy** ⚖️423(1)—**Petition, alleging that plaintiff sold defendant goods, relying on false financial statement, held to state action for fraud, within Bankruptcy Act (Bankr. Act, § 17 [11 USCA § 35]).**

Petition, alleging that plaintiff sold defendant goods, relying on false financial statement, and defendant failed to pay for goods and became insolvent, *held* to state cause of action for fraud, rather than action based on contract, within Bankruptcy Act, § 17 (11 USCA § 35), providing that a discharge in bankruptcy shall release bankrupt from debts except such as were created by his fraud.

2. **Bankruptcy** ⚖️363—**Accepting dividends from bankruptcy court on claim for price of merchandise which bankrupt procured by fraud held not to waive right to sue for fraud.**

Accepting dividends from bankruptcy court on claim for price of merchandise which plaintiff had sold to bankrupt on claim induced by false financial statement *held* not to waive right

to sue for the fraud, since liability arising therefrom was not provable by plaintiff in bankruptcy and could not, under Bankruptcy Act (11 USCA), be discharged unless plaintiff's claim was fully satisfied.

3. **Bankruptcy** ⚖️423(1)—**For debt to be exempt from discharge in bankruptcy because procured by fraud, evidence must show actual fraud involving intentional wrong (Bankr. Act, § 17, cl. 4 [11 USCA § 35]).**

For debt to be exempt from discharge in bankruptcy because procured by fraud under Bankruptcy Act, § 17, cl. 4 (11 USCA § 35), there must be sufficient evidence on the issue of fraud to justify findings of positive or actual fraud involving moral turpitude or intentional wrong.

4. **Bankruptcy** ⚖️423(1)—**Buyer's financial statement with agreement to inform seller of any change held continuing representation of buyer's financial condition.**

As respects dischargeability of bankrupt's debt, buyer's financial statement, to which was attached agreement to inform seller of any change in financial condition, *held* continuing representation equivalent to positive declaration on each new order that buyer's financial condition was substantially the same as represented in the statement.

5. **Bankruptcy** ⚖️423(1)—**Accepting merchandise without informing seller according to written agreement of change in financial condition held actual fraud precluding discharge of debt in bankruptcy (Bankr. Act, § 17 [11 USCA § 35]).**

Where buyer submitted financial statement to seller's agent with agreement to inform seller of any change in his financial condition, accepting merchandise without informing seller that his financial condition had changed, *held* actual fraud within Bankruptcy Act, § 17 (11 USCA § 35), providing that discharge in bankruptcy shall not release bankrupt from debts created by fraud.

6. **Appeal and error** ⚖️931(3)—**It will be presumed trial court found facts necessary to support judgment, if evidence is sufficient to justify such findings.**

Facts necessary to support judgment of trial court, having reasonable support in the evidence, will be presumed to have been found by trial court and acted upon in rendering judgment.

7. **Appeal and error** ⚖️1010(1)—**Judgment supported by evidence will not be disturbed, though different conclusion might have been reached.**

Where there is evidence upon which trial court could have found facts necessary to support its judgment, appellate court will not disturb its decision, although a different conclusion than that announced could have been reached.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Action by the International Shoe Company against Jacob Ginsberg. Judgment for plaintiff, and defendant appeals. Affirmed.

J. J. Fagan, of Dallas, for appellant.

Thompson, Knight, Baker & Harris, of Dallas, for appellee.

VAUGHAN, J. Appellee, International Shoe Company, a private corporation, plaintiff below, sued appellant, Jacob Ginsberg, defendant below, for damages in the sum of $1,019.53, alleging that on April 28, 1925, appellant made to appellee a financial statement as representing his financial condition on January 1, 1925, in which statement appellant made the following agreement and recitation:

"Should there be any change in the composition of the firm, or financial condition as represented below, will notify you immediately."

In said financial statement, appellant stated that his active business assets amounted to $20,347, and that his liabilities amounted to $8,134. Appellee alleged that said financial statement was given and made to it by appellant for the purpose of procuring credit from appellee, and that, acting on the faith and truth of said statement, appellee extended credit to appellant and sold him goods, relying on the faith and truth thereof; that said financial statement so made by appellant was not a true statement of his financial condition, and that appellant knew that same was not true, or, if he did not know that same was not true, that he made said statement recklessly without regard for its truth or falsity; that said statement was, by its terms, a continuing statement, and that, although the financial condition of the appellant grew worse and worse, and his liabilities became heavier and heavier and far exceeded his assets, appellant failed to notify appellee of said change in his financial condition and continued to obtain credit from appellee on the strength and faith of said statement; and that he did this willfully and with the intent and design to deceive appellee and receive such credit; and appellee further alleged that, if it was mistaken in alleging that appellant willfully failed to notify it of said change and condition and of the consequent liability of said statement, he did so recklessly without regard for its truth or falsity. It is further alleged that, beginning a short time after the making of said statement, appellant became heavily involved and incurred heavy indebtedness, but that he did not notify appellee thereof, as he was bound to do, and that his failure to do so deceived appellee and caused it to ship goods to appellant, and if it had known the truth of the condition of appellant, it would not have shipped said goods, and that appellant's action and omission in failing to so advise appellee were willfully fraudulent, and if not willfully fraudulent, that they were reckless and with-out regard for truth or falsity. It was further alleged that on account of said acts and omissions, by reason of appellee's relying upon the truth and faith thereof, and of said continuing financial statement, appellant obtained from appellee goods of the reasonable value of $1,019.53, and that appellee was damaged by said fraud and deceit of appellant in the sum of $1,019.53, which was the reasonable value of the goods so obtained, with interest thereon at 6 per cent. from January 1, 1926.

Appellant answered by general demurrer and general denial and exceptions, pleaded his adjudication and discharge as a bankrupt and the fact that appellee had filed its claim in the bankruptcy court and had received and accepted dividends thereon, and alleged that, by reason thereof, appellee is precluded from maintaining its suit and estopped from setting up any cause of action of any kind or character growing out of said transaction against the appellant.

Trial was had on the 29th day of December, 1926, before the court without the intervention of a jury, which resulted in appellant's general exception being overruled and judgment rendered in favor of appellee for the sum of $1,019.53, with interest thereon at the rate of 6 per cent. per annum from January 1, 1926.

Because of the insistent and extended presentation by appellant of his assignment of error that the court erred in not sustaining his general demurrer to appellee's petition, we deemed it advisable to present the material allegations of appellee's petition quite at length. Was the general demurrer properly overruled? It is insisted (a) that appellee's "petition shows on its face that plaintiff's cause of action was based on a contract for the sale of goods to defendant"; (b) "that defendant had been discharged in bankruptcy, and therefore plaintiff could have no cause of action against the defendant where a voluntary petition in bankruptcy had been filed, plaintiff notified, filed its claim, and received dividends thereon from the bankruptcy court, would be bound thereby, and defendant's discharge would preclude plaintiff from a recovery in this suit upon the foregoing allegations."

[1] As to the first contention, it is sufficient to say same can only be based upon the allegations dealing with the facts under which the relationship of creditor and debtor arose between appellant and appellee, viz., the making of the financial statement by appellant, the sale of goods thereunder by appellee to appellant, the falsity of the statement under which the sales were made, the failure to pay for the merchandise so purchased, the insolvency of appellant, all being necessary to show the origin of the relationship that existed between appellant and appellee during the time of the several transactions upon which appellee based its right to recover for and on account of the damages

alleged to have been sustained by virtue of the fraud charged to have been perpetrated upon appellee by appellant in the purchase and sale of merchandise as alleged in said petition. We are therefore of the opinion that the petition properly alleged a cause of action in tort for damages sustained through the commission of actual fraud. This is borne out by the allegation, "Plaintiff says that it has been damaged by said fraud and deceit of said defendant in the sum of $1,019.53, with interest at 6 per cent. per annum from January 1, 1926." Bankruptcy Act, § 17 (11 USCA § 35); Sanger Bros. v. Barrett (Tex. Civ. App.) 221 S. W. 1087.

[2] Appellant's second contention is ruled by the holdings in cases of Talcott v. Friend (C. C. A.) 179 F. 676, 43 L. R. A. (N. S.) 649, and in Friend v. Talcott, 228 U. S. 27, 33 S. Ct. 505, 57 L. Ed. 718, in which the holding in 179 Federal, supra, was reviewed and the ruling therein substantially approved, viz., that accepting dividends did not waive the right to sue on the tort, nor was it res adjudicata as to such action. Sanger Bros. v. Barrett, supra. We therefore hold that the fact that appellee duly proved up his claim against appellant in the bankrupt court against the estate of appellant as a bankrupt, and the receiving of dividends thereon, did not operate to destroy appellee's right to maintain its action for deceit, as the liability arising therefrom was not provable by appellee in bankruptcy and could not, under the Bankruptcy Act, be discharged, unless its claim had been fully satisfied. Appellee's claim was not fully discharged, payment of the dividends received by it leaving a balance due of $1,019.53, being amount sued for as damages sustained by appellee on account of the actual fraud alleged to have been perpetrated by appellant through which appellee was induced to sell goods to appellant in that amount. We therefore hold that the court did not err in overruling appellant's general demurrer. The remaining propositions will be disposed of under a general discussion, it not being necessary to discuss same seriatim.

We find the following probative facts to have been established:

On April 28, 1925, appellant made to appellee a financial statement of his mercantile business, as the same was shown to have been at the date of his last invoice taken January 1, 1925, for the purpose of obtaining credit from and establishing a mercantile standing with appellee. The material elements of this statement will be revealed in the discussion of the propositions presented for our consideration. That said statement showed appellant's assets as of January 1, 1925, viz., active business assets $20,347, and liabilities $8,134, and assumed that no material change had taken place therein up to the date said statement was made; that said statement was sent to appellee for the attention of W. B. Smalley, credit man for appellee in the states of Texas, Oklahoma, and Louisiana; that prior to this statement, appellant had not been prompt in the payment of his bills to appellee, and said Smalley, as appellee's credit man, had determined to refuse to extend him further credit until he received appellant's financial statement of April 28, 1925; that said Smalley, believing that it truly and correctly reflected the financial condition of appellee's business, determined to continue appellant's account; that on the strength of said financial statement, believing that it was true, and that no material adverse change had taken place therein, appellee, acting through its said credit man, extended all credits to appellant at Dallas and Winters for merchandise purchased by appellant from appellee from April 30, 1925, to January 27, 1926; that in February, 1926, appellant filed his petition to be adjudged a bankrupt, in which he stated his liabilities were $22,371 and assets about $20,000, showing an increase in liabilities from $8,100 to $22,371. On the 8th day of June, 1926, an order was entered in the matter of Jacob Ginsberg, bankrupt, discharging appellant from all his provable debts and claims which existed on the 26th day of February, 1926, excepting such debts as are by law excepted from the operation of a discharge in bankruptcy. The increase in liabilities occurred during the last months of 1925 and during the month of January, 1926. Most of the merchandise creating the increase in liabilities was purchased during the months of November and December, 1925; that no financial statement subsequent to the statement dated April 28, 1925, was furnished to appellee by appellant; that appellant did not notify appellee, or its said credit man, Smalley, of the changes that took place in his financial condition immediately thereafter or at any time before he filed his voluntary petition to be adjudged a bankrupt, and appellee did not receive from any other source any notice of the changes that had taken place in appellant's financial condition whereby his liabilities had increased from $8,100 to $22,371, and did not learn that appellant's financial condition was other than as represented by him in his financial statement of date April 28, 1925, until after the filing of his petition in bankruptcy, and that neither appellee nor its credit man would have sold or shipped any merchandise to appellant if they had known that there had been a material adverse change in his financial condition, or that his financial condition was other than as reflected in his financial statement, and that his indebtedness had increased; that if appellee's credit man, Smalley, had known that appellant's financial statement was not true, or that it did not truly reflect his financial condition, or that said change had taken place in his financial condition, he would not have extended any credit to appellant whatever.

It is true, appellant testified that he noti-

fied appellee of the changes in his financial condition as same took place by communicating such changes from time to time to Mr. McDaniels, appellee's city salesman in Dallas, Tex., appellant testifying as follows:

"I told Mr. McDaniels my financial condition and advised him that I was not in a position to purchase any more goods as I was without money and the house would not care to credit me for any further sum than I already owed them. I gave orders for the goods, which were shipped to me through Mr. McDaniels with his full knowledge as to my financial status, and as to the indebtedness that I was then owing, and the goods were shipped to me by the plaintiff through the salesman, Mr. McDaniels, with full knowledge of all the facts and circumstances connected with my liabilities and the amount owing to my creditors."

Diametrically opposed to this was his testimony on cross-examination, namely:

"I did not know there was any change until after I had taken stock the 1st of January. After that I did not buy any more goods. I canceled a lot of orders for the spring trade. Most of the merchandise was purchased by me during the months of November and December, 1925, which was about two months before I took the inventory the 1st of January, 1926, and when I took the inventory it was the first time that I realized there had been any change in my financial condition."

As to the amount of goods purchased and payments made thereon there was no controversy. In brief, it may be summed up as follows: Between April 30, 1925, and January 27, 1926, the purchases of merchandise by appellant from appellee amounted to $3,386.97, payments made thereon aggregated the amount of $2,367.44, leaving a balance of $1,019.53 due for goods so purchased and not paid for by appellee. Of the $2,367.44 paid by appellant, the sum of $899.86 was the aggregate amount of dividends received from appellant's trustee in bankruptcy.

[3] Under the judicial construction placed upon fourth provision of section 17, supra, relating to debts not affected by discharge, namely, "a discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * were created by his fraud," it was necessary to the proper rendition of the judgment against appellant that there was evidence before the court of sufficient material import bearing on the issue of fraud on which the court could have reasonably predicated findings therefrom that the sales of merchandise made to appellant, as alleged by appellee, were procured through the means of positive or actual fraud perpetrated by appellant involving moral turpitude or intentional wrong. Zimmern v. Blount, 238 F. 740, 151 C. C. A. 590; Sanger Bros. v. Barrett (Tex. Civ. App.) 221 S. W. 1087; J. M. Radford Grocery Co. v. Halper (Tex. Civ. App.) 274 S. W. 1023; In re Blumberg (D. C.) 94 F. 476; Higginbotham-Bart-

lett Co. v. Powell (Tex. Civ. App.) 270 S. W. 193. There is quite a marked difference between section 14 of the act (11 USCA § 32), which has to do with the right of a bankrupt to obtain an order of the bankruptcy court discharging him from all of his provable debts, and section 17, supra, which deals with debts not affected by discharge, debts which, notwithstanding the discharge of the bankrupt, remain a liability against him because created under one or more of the conditions named in said section 17, whereby a discharge granted under section 14 will not release against liability for a payment of such debts.

[4, 5] What was the legal effect of said financial statement taken in connection with the dealings thereunder by appellant and appellee?

Said statement was made for the purpose of enabling appellant to obtain credit from appellee to establish with appellant a mercantile standing, not only for goods that appellant contemplated purchasing at that time, but for goods that he should purchase from appellee in the future. This was a continuing statement, and each order thereafter placed by appellant with appellee for goods was an affirmative assertion to appellee that no adverse change had taken place in appellant's financial condition, but that same at least remained substantially as good as said statement showed same to have been on the 1st day of January, 1926. Until notified to the contrary by appellant, appellee had the right to accept each order for goods thereafter made by appellant as a positive declaration on the part of appellant that:

"I am ordering these goods from you on the faith of the mercantile standing established with you through my statement of date April 28, 1925, in which no material change has taken place to the detriment thereof, but, to the contrary, my financial condition is now substantially the same as represented to be in my statement of April 28, 1925, namely, that my active business assets amount to $20,347; that my liabilities amount to $8,134, or that substantially the same ratio, regardless of the present amount of my assets and liabilities, has been maintained between the assets and liabilities as stated in said report."

Each order for merchandise was a declaration that appellant had kept up with the changes, if any, that had taken place in his financial affairs, knew his condition, and that no material change adverse to said statement had taken place. This does not add any additional burden to appellant under the law on account of the statement made by him to appellee, for every one is presumed, under the law, to have knowledge of his business affairs, the nature and scope of his holdings and his liabilities. The only burden placed upon appellant by the agreement, in addition to this reasonable presumption, was that he would, in the event of any change in his financial condition as represented in said state-

ment, notify appellee immediately. If appellant had notified appellee of the adverse changes from time to time as same took place in his financial condition, the credit accorded him would not have been extended on the faith of said statement, but would have been denied. But appellee was induced—by what we feel justified in terming affirmative acts of appellant—to extend to appellant the credit that enabled him to obtain the goods for which he never paid, viz., the withholding from appellee notice of the adverse changes that had taken place in his financial condition, and his orders for goods, same being in effect a reaffirmation to appellee that no material adverse change had taken place in his financial condition as represented in said financial statement to be at the time same was made, and on which he expected appellee to rely in selling him on credit the goods so ordered. This, we think, amounted in law to an actual fraud. The credit was not extended on the face of the statement unaided by other acts and conduct on the part of appellant, but said financial statement was reasserted by him as each order for goods was placed by him with appellee thereafter, as much so as if the statement had been reproduced literally embodying the same information as to the assets and liabilities of appellant as contained in said original statement. Certainly this was a case in which the acts of appellant spoke just as affirmatively and effectively as his written statement would have if made to appellee with each additional order of merchandise repeating in effect his financial condition as to assets and liabilities. Talcott v. Friend (C. C. A.) 179 F. 676, 43 L. R. A. (N. S.) 649, supra; Friend v. Talcott, 228 U. S. 27, 331 S. Ct. 505, 57 L. Ed. 718, supra; Hancock v. Blumentritt et al. (Tex. Civ. App.) 269 S. W. 177.

[6, 7] The trial court undoubtedly, and as it had the right to do, rejected appellant's evidence as to having given to appellee notice of the changes that had taken place in his financial condition through communications made by him to one Mr. McDaniels, the Dallas city salesman of appellee, and held, as we must assume, same being necessary to support the judgment rendered, that he did not know the changes that had taken place in his financial condition until after he had taken invoice January 1, 1926, and therefore he had not communicated his changed financial condition to appellee, or to the department having charge of its credit business in Texas, or to its sales agent, Mr. McDaniels. This is but applying the well-recognized rule that facts necessary to support the judgment of the trial court, having reasonable support in the evidence as a whole, will be presumed to have been found by the trial court, and acted upon in the rendition of its judgment. Regardless of the fact that a different conclusion than that announced by the judgment appealed

from could have been reached, there being evidence from which the court could have found the facts necessary to the conclusion reached, no reversible error is presented, and it is our opinion 'that the judgment of the lower court should be affirmed, and it is so ordered.

Affirmed.