BIDAULT et al., Respondents, vs. WALES & SONS, Appellants.

1. To avoid a sale of goods on credit, it is not sufficient that the purchaser did not intend to pay for them *at the time agreed upon*. He must, when he buys, intend *never* to pay for them, to prevent the title from passing; and this is a question for a jury.

2. Although a vendor may avoid a sale as against the purchaser, yet this cannot be done when the rights of third parties have intervened. This exception however does not embrace creditors of the purchaser seizing the property by attachment or under execution, or taking it by assignment as a security for pre-existing debts.

Whether it would extend to the protection of the lien of a factor of the purchaser for a general balance, or a lien in relation to the specific property, left open.

## *Appeal from St. Louis Circuit Court.*

This was an action by Bidault & Co. to recover sixteen hogsheads of sugar, or the value, consigned to defendants as the factors of one Whiting, who claimed the sugar under an alleged sale to him by the plaintiffs, which, as the latter insisted, did not pass the title, by reason of his fraud. The allegations of the original petition are stated in the opinion of the court when the cause was ·formerly here. (19 Mo. Rep. 36.) After it was remanded, the plaintiffs amended their petition, by stating that " Whiting purchased and received the possession of the sugar: without any intention of paying for the same, and with the purpose of cheating and defrauding the plaintiffs out of their property." The defendants took issue upon this additional averment. They further alleged that when the sugar was consigned to them, Whiting was indebted to them, and that this indebtedness had not been paid, and that they had been summoned as garnishees in a suit against Whiting, brought by a party to whom he was indebted in a larger amount than the balance which would remain in their hands after payment of their demand. The cause was tried before a jury. There was evidence that the sugar was bought of plaintiffs in New Orleans on a credit of ten days by an agent of Whiting for him and under his instructions, and was shipped to defendants at St. Louis to be sold on his account ; that he was insolvent at the time of giving the instructions, and at the time of the purchase, and was aware of his insolvency ; that for some time previous he had been making purchases of sugar and with the proceeds paying for preceding purchases ; that his agent had made a previous purchase of plaintiffs which had been paid for

with the proceeds of sugar subsequently bought of another party ; that he was not in New Orleans at the time of the last purchase from plaintiffs, but arrived four or five days afterwards, and drew drafts against the sugar in favor of other parties, to whom he was indebted for previous purchases, for one third of the amount of his indebtedness to them respectively, and offered to give plaintiffs a draft for one third of the amount of his indebtedness to them, they granting an extension for the balance, which they refused to accept.

The defendants offered to show the state of accounts between them and Whiting when they received the sugar, but this evidence was excluded, and an exception taken. They also offered to read in evidence the judgment in the suit against Whiting and the proceedings against them as garnishees in that suit. This evidence was likewise excluded. All the instructions asked by the defendants were refused, and the court, of its own motion, gave one which is set out in the opinion of the court, under which there was a verdict for the plaintiffs. The defendants appealed.

*Knox & Kellogg*, for appellants. 1. The instruction given by the court is erroneous, as it asserts the doctrine that a man who does an honest act with a worthy motive is guilty of fraud because he was insolvent and knew of his inability to meet his engagements, and pay his debts as they matured. 2. The court erred in rejecting the evidence of the state of accounts between Whiting and the appellants.

*Glover & Richardson*, for respondents. 1. The principle is well established that if a vendee, at the time of a sale, knows of his inability to pay, and purchases on credit with the preconceived design not to pay, the title to the property does not pass. (*Bidault* v. *Wales*, 19 Mo. Rep. 37. *Earl of Bristol* v. *Wilsmore*, 1 Barn. & Cress. 520. *Noble* v. *Adams*, 7 Taunt. 59. 12 Pick. 312.) 2. The question of intent being one for the jury, this court will not look into the evidence, to see if it supports the verdict. 3. The evidence as to the state of accounts between the defendants and Whiting was properly ex-

cluded, because, if no title passed by the sale to Whiting, the defendants had no right to make their debt against Whiting out of plaintiffs' property. For the same reason, the judgment against Whiting and the garnishment of the defendants in that suit were immaterial. 4. The instruction given was more favorable to the defendants than the law required. It required the jury to find, not only that Whiting did not intend to pay when he made the purchase, but to find the further fact that the purchase was but a contrivance on his part to sustain his credit.

LEONARD, Judge, delivered the opinion of the court.

1. This judgment must be reversed on account of the instruction given to the jury as to the law of the case.

When it was here before (19 Mo. Rep. 36,) this court held in substance, that a purchaser did not acquire a valid title to property if he got it under the mere form of a purchase, made with a preconceived design of never paying for it ; but that mere inability to pay, even if known to the purchaser at the time of the purchase and concealed from the seller, did not avoid the sale ; and we think the law was correctly laid down ; but however that may be, it was the judgment of this court, and must be submitted to as the law of the case.

The plaintiff amended by inserting an averment to the effect that the party "purchased and received the property without any intention of paying for the same, and with the purpose of cheating and defrauding the plaintiffs out of their property," and upon a jury trial the court instructed that "if Whiting (the purchaser) at the time of the purchase of the sugar in question, was in good or ordinary credit, on a sale of ten or twenty days, but in fact was *unable to pay at the time agreed upon between the parties*, and was aware of his inability *in this respect*, and the jury shall further find that he did not, at the time of said purchase, intend to meet *his engagements*, but that said purchase was but a contrivance on his part to sustain his

credit, the plaintiffs are entitled to a verdict; otherwise the jury will find for defendants."

Under this direction, the jury would of course find for the plaintiffs, if they thought the purchaser was unable to pay when he bought, and that he knew this and concealed it from the plaintiffs, and bought for the purpose of sustaining his own credit, and without any expectation or intention of meeting the payment on the day it fell due, although hoping and intending ultimately to pay.

And it has been argued here, that this instruction contains every element necessary to constitute a fraudulent purchase according to the law laid down upon the former occasion, and indeed that it even goes in favor of the purchaser beyond what we deemed to be the law, in directing the jury that they must also be satisfied that the purchase was but a contrivance on the part of the buyer to sustain his own credit. We think quite otherwise, and that the instruction was very unfortunately expressed, if the purpose of it were (as we must presume it was) to convey to the jury the rule of law prescribed here as applicable to the case.

There is a very broad line of distinction, both in morals and law, between the conduct of one who gets property into his possession with a preconceived design never to pay for it, under color of a formal sale induced by a sham promise to pay which the party never intends to comply with, and the conduct of a man deeply involved in debt, far perhaps beyond his means of payment, and who, struggling it may be, and frequently is, against all rational hope, to sustain his credit and maintain his position in business, buys property to-day, under a promise (which he can hardly hope and most probably does not intend to keep) to pay for it on short time, in order to raise money from day to day to meet immediate and more pressing demands. Yet, under this instruction, the jury may well have supposed, and no doubt did suppose, that the law made no distinction, but visited both classes of cases with the same legal consequences. The difference between not intending to pay on

the day fixed by the contract and intending never to pay—between getting property for nothing, under the mere color of a purchase, and getting it upon a longer credit than was agreed upon by the parties, but with an expectation ultimately to pay, is entirely lost sight of, or rather indeed, as it seems to us, the jury are in effect instructed that there is no difference, and that it is enough in this particular to avoid the sale as a fraudulent purchase, that the purchaser was unable to pay " at the time agreed upon," and aware of his inability " in this respect," and did not intend to meet " his engagements" in point of time.

It was said before and is repeated now, that this is a question for a jury under proper instructions from the court. Although it may be improper in morals for one to buy property upon a promise to pay on a given day, when the party is conscious of his inability to meet his engagements at the time, and so may be said to buy with an intention not to meet his engagements, yet this is not, in point of law, such a sale as the vendor can avoid, and it was the duty of the court, in its directions to the jury, to have made the distinction in unmistakable language, and not to have employed general expressions, capable of being argued one way before the jury and another way before the court, and which the jury could construe to mean one thing or the other, according to the caprice of the moment, or their own peculiar views of the conduct of the parties in other respects.

We have been referred by the counsel for the plaintiffs to the case of *Noble* v. *Adams*, (7 Taunt. 59,) as a case similar in its circumstances to the present one. That case was tried before the Chief Justice of the Common Pleas, and the instructions he gave the jury were approved of by the whole court, upon a motion for a new trial, and an examination of that ruling will show that we are justified in the opinion of that court in all we have said here.

The purchaser there, a trader in London, being in embarrassed circumstances, went down to Glasgow and bought the

goods, paying for them with his own acceptance, and with bills of a third person whom he knew to be insolvent, and the suit was by the purchaser against a wharfinger in London who defended for the benefit of the former owner, and the question made upon the trial was, whether the plaintiff purchased the goods under such circumstances as vitiated the sale for fraud. The Chief Justice directed the jury that " If they thought the purchaser went to Scotland, having formed a deliberate design to put off bad bills for valuable merchandise, knowing the goods would never be paid for, and intending then to abscond with the goods, or to throw them into immediate bankruptcy, or to pass them over to a particularly favored creditor, the purchaser was guilty of a fraud, and the sale would not change the property ; but if the purchaser only meant to give these bills, and himself by these bills, more credit than they deserved, and intended to continue to carry on his business and to try to pay for the goods at some time or other, if he could, that was not such a fraud as would vitiate the sale."

Here, the distinction to which we have referred is broadly marked, and the attention of the jury called directly to it, so that they tried the case with a clear understanding of the rule of law they were bound to apply to it.

With the facts of the case now before us, we have nothing to do. Our duty is discharged when we see that the court trying the cause has properly instructed the jury as to the law that ought to govern them in deciding it. The responsibility of rightly determining the facts is upon the court and jury below.

2. The other point made in the cause may be disposed of in a few words. This property appears to be in the hands of the defendants as Whiting's factors, and they allege that when it came there, a large balance was due to them on general account from their principal, and that they have since been summoned upon an execution against their principal, as garnishees, in respect to this property. When it is said, in the case of a fraudulent purchase, that the property is not changed, it is to be understood that, although the party injured may avoid the sale

against the fraudulent purchaser, this cannot be done when the rights of third persons have intervened. This exception, however, does not embrace the general creditors of the purchaser seizing the property by attachment or execution, or taking it by assignment as a security for pre-existing debts.

It may extend, however, to the protection of a factor's lien, even for a general balance, and it would seem, ought certainly to protect any lien he may have in relation to the specific property; and whether the proceedings in the garnishment had progressed so far as to fix any personal liability upon him in respect to the attached property, is not disclosed; and we leave these questions for future consideration, if they shall arise in the cause. The judgment is reversed, and the cause remanded for further proceedings.