## HIGGINBOTHAM–BARTLETT CO. v. POW-ELL et al.  (No. 2434.)*

(Court of Civil Appeals of Texas.  Amarillo.
March 11, 1925.)

**1. Homestead ⚿107—Evidence held to sustain finding that buyer was not insolvent when purchasing material from seller.**

In seller's action to place constructive trust on buyer's homestead for buyer's fraud in concealment of his insolvency in purchasing material for improvement thereof, evidence *held* to sustain finding that buyer was not insolvent, within U. S. Comp. St. § 9585, subd. 15, at time of purchase.

**2. Bankruptcy ⚿423(1) — "False pretenses" and "false representations" defined.**

"False pretenses" and "false representations," as used in U. S. Comp. St. 1916, § 9601, subd. 2, providing that a discharge in bankruptcy shall release bankrupt from all provable debts except liabilities for obtaining property by false pretenses or false representations, means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as distinguished from implied fraud, or fraud in law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, False Pretense; False Representation.]

**3. Sales ⚿44—Sale avoided for fraud only, if purchaser did not intend to pay in any event.**

Sale is avoided for fraud only, if purchaser did not intend to pay in any event, and merely an intention not to pay according to contract is not sufficient.

**4. Homestead ⚿107—Evidence held to sustain finding that buyer had reasonable expectations of paying seller at time of purchase of material.**

In seller's action to place constructive trust on buyer's homestead for buyer's fraud in concealment of his insolvency in purchasing material for improvement of homestead, evidence *held* to sustain finding that buyer had reasonable expectations of paying seller out of his calf crop at time of purchase.

**5. Homestead ⚿107—Scheduling of debts in bankruptcy held not conclusive of buyer's insolvency.**

In seller's action to place constructive trust on buyer's homestead for buyer's fraud in concealment of his insolvency in purchasing material for improvement of homestead, that subsequent to purchase buyer scheduled many of debts in bankruptcy which were at time of purchase in existence, but few, if any, of which were due, was not conclusive of his insolvency at time of purchase.

**6. Homestead ⚿107—Burden on seller to establish facts necessary to recovery.**

In seller's action to place constructive trust on buyer's homestead for buyer's fraud in concealment of his insolvency in purchase of material for improvement of homestead, burden was on seller to establish facts necessary to its recovery.

**7. Homestead ⚿107—Buyer's failure to meet obligations as falling due held only a circumstance showing insolvency.**

In seller's action to place constructive trust on buyer's homestead for buyer's fraud in concealment of his insolvency in purchase of material for improvement of homestead, that buyer was unable to pay obligations as they became due was only a circumstance tending to show that he was insolvent.

**8. Homestead ⚿107—Buyer's inability to pay obligations falling due held not to show fraud.**

In seller's action to place constructive trust on buyer's homestead for buyer's fraud in concealment of his insolvency in purchase of material for improvement of homestead, buyer's inability to meet his obligations as they became due was not conclusive that he was guilty of such fraud as carried with it moral turpitude or intentional wrong.

**9. Sales ⚿43(2)—Fraud must be actual to enable seller to rescind sale of personal property.**

Seller cannot rescind sale of personal property and recover it for fraud, unless fraud was active or actual involving moral turpitude or intentional wrong.

**10. Fraud ⚿12—False representations must be of existing fact.**

False representations, to constitute fraud, must be of an existing fact and not a promise of something to be done in future, unless such promise was made with intention of deceiving, and with no intention at the time of performing it.

**11. Fraud ⚿12—Promise of buyer to pay held not to constitute fraud.**

Promise of buyer in good faith to pay for material out of calf crop to be sold about January, after purchase of material in August, *held* a promise to do something in future, and not to constitute fraud, actual or constructive.

**12. Fraud ⚿16—Failure of buyer to disclose mortgage held not to constitute fraud.**

As respects the question of buyer's fraud in inducing sale of material in reliance on payment out of buyer's calf crop, buyer's failure to tell seller that his calf crop was under mortgage *held* not such a suppression of truth as to constitute fraud, where no fiduciary relations existed between parties, no inquiry was made, and no statement of buyer's financial condition requested or given.

**13. Fraud ⚿16—Mere silence does not constitute fraud.**

Mere silence or failure to volunteer information is not fraud, actual or constructive.

Appeal from District Court, Lubbock County; Parke N. Dalton, Special Judge.

Action by the Higginbotham-Bartlett Company against J. I. Powell and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Robt. H. Bean and Bean & Klett, all of Lubbock, for appellant.

⚿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

270 S.W.—13  *Writ of error dismissed for want of jurisdiction May 20, 1925.

Bledsoe & Pharr, of Lubbock, for appellees.

JACKSON, J. Appellant reasserts the errors urged in his brief and insists that this court make specific findings of fact and conclusions of law on certain alleged errors, which it was deemed sufficient to pass on generally in the original opinion. To do this will require a discussion of some principles which we assumed in the original opinion, and can be accomplished more satisfactorily by rewriting the opinion than by writing an opinion on the motion for rehearing; the original is therefore withdrawn and this will be substituted therefor.

This suit was instituted in the district court of Lubbock county by appellant, Higginbotham-Bartlett Company, a corporation, against J. I. Powell and wife, Lena Powell, appellees. Appellant alleges as a cause of action against J. I. Powell, herein called appellee, that in the year 1920 it sold and delivered to him lumber and building material of the reasonable market value of $999.95, upon the false promise and representation of appellee that he would pay therefor the above price, which promise and representation it believed and acted upon, and the lumber and material was delivered, and used by appellee in making permanent and valuable improvements on 160 acres of land fully described in plaintiff's petition, and admitted to be the homestead of appellee and family; that by reason of the premises, a constructive trust resulted, and appellee became a trustee for the lumber and material sold to him by appellant and placed in the improvements on said land, and thereby an equitable lien was created in behalf of appellant on said land and improvements to secure the payment of said $999.95; that on or about January 1, 1921, appellee executed and delivered his promissory note for said sum, due July 1, 1921, with 10 per cent. interest thereon, and with the usual stipulation for attorney's fees; that said lumber and material was obtained and the debt and liability created at a time when appellee was insolvent and knew, or by the exercise of reasonable diligence would have known, that he was insolvent and financially unable to pay his debts, and without sufficient property in this state subject to execution to take care of his liabilities, and in acquiring said lumber and material under such conditions, he was guilty of constructive fraud, which amounted to obtaining property under false and fraudulent representations; that in order to obtain title and possession of the lumber and material, and for the purpose of deceiving and misleading appellant, appellee fraudulently promised and represented that if appellant would let him have said material, he could and would pay therefor out of the proceeds of the sale of his 1920 calf crop; that appellee did not and could not intend to keep said promise and representation to so pay for said material, because his financial affairs and credit were in such condition that it was practically impossible for him to do so; that his calf crop was then, and had been for some time prior thereto, under mortgage to secure debts amounting to over $28,000; that the mortgage greatly exceeded the value of the calf crop; that all of the property belonging to appellee, real and personal, was mortgaged for $55,000 or $60,000, and more than it was worth; that appellee concealed his financial condition, did not disclose the same to appellant, or that said calves were under mortgage, and knew the proceeds from the sale of the calf crop would have to be applied to the payment of the debt secured by the mortgage; that the promise and representation of appellee had the effect of causing appellant to believe that appellee could and would pay for said material out of the proceeds of the sale of the calf crop, and appellant was ignorant of the financial condition of appellee, and especially that the calf crop was under mortgage, and would not have delivered said material or taken said note had it known the truth; that the defendant Lena Powell is asserting some adverse claim to the land. Appellant prayed judgment for its debt, damages, attorney's fees, costs of suit, and that a decree be entered fixing a lien against said land and improvements, and that the property be sold under an order of sale, and the proceeds applied to the satisfaction of its debt.

Appellee answered by general demurrer, special exceptions, general denial, and specially pleaded that on October 25, 1921, he filed his petition in bankruptcy in the District Court of the United States for the Northern District of Texas at Amarillo, was duly adjudged a bankrupt, and on February 4, 1922, by judgment of said bankruptcy court, was duly discharged from all debts owing by him, including the debt sued upon by appellant. Appellee denied in his supplemental answer the right of Higginbotham-Bartlett Company to maintain the suit, but as that raises no issue before this court, no detailed statement of such answer will be made.

The case was submitted on special issues, in response to which the jury found: (1) That appellee was not insolvent at the time he purchased the lumber and material from appellant. (2) That at the time he purchased the lumber and material he had a reasonable expectation of being able to pay therefor out of the 1920 calf crop. (3) That appellee was able to pay his debts as they became due when he purchased the lumber and material.

Appellant, by proper assignments, challenges the correctness of the finding of the jury on each of said issues, and the correctness of the action of the trial court in rendering judgment thereon against it, because

the findings of the jury are unsupported by, and contrary to, the great weight and preponderance of the evidence.

[1] Under the Act of July 1, 1898 (section 9585, subd. 15, U. S. Compiled Statutes), it is provided that:

A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, * * * shall not, at a fair valuation, be sufficient in amount to pay his debts."

In Owens et al. v. American National Bank of Austin, 36 Tex. Civ. App. 490, 81 S. W. 988, it is said:

"In view of the authority of the Congress of the United States to enact bankruptcy laws, and such laws having been enacted and being in operation, we are of opinion that, when the question of insolvency is in issue in a state court, it would be proper for such court to follow the definition of 'insolvency' as embraced in the bankrupt law as enacted by Congress."

Appellee testified that he knew the market value of his cattle at the time he purchased the lumber and material from appellant; that he owned 350 cows of the value of $50 per head, 250 calves, $30 per head, 35 bulls, $100 per head, 183 coming three year old heifers, $50 per head, 68 steer yearlings, $40 per head, the aggregate of which is $40,370. These cattle were incumbered by a chattel mortgage dated May 21, 1920, for $28,406.52, bearing interest at 9 per cent. per annum. He testified that he owned two sections of land besides his homestead, of the value of $57,600, incumbered at that time for $26,500, with some accumulated interest; that he owned vendor's lien notes amounting to $8,400; that in addition to the above, his homestead was valued at $6,000, besides he owned some horses, mules, farm implements, etc.; that he owed unsecured current bills amount to about $5,000, and was on two indemnity bonds for other people aggregating $3,800.

This testimony, which is not controverted, reveals that independent of his homestead and other exemptions, the value of his property subject to the payment of his obligations exceeded the amount of his indebtedness over $42,000. Determined by this evidence and the test of insolvency prescribed by the statutes of the United States, which is the one applied by Chief Justice Conner in Posey v. McManis, 28 Tex. Civ. App. 452, 67 S. W. 792 (writ denied), the finding of the jury that appellee was not insolvent at the time he purchased the material from appellant must be sustained.

Section 9601, U. S. Compiled Statutes 1916, provides:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts except such as * * * (2) are liabilities for obtaining property by false pretenses or false representations." * * *

In the case of Neal v. Scruggs et al., 95 U. S. 704, 24 L. Ed. 586, Justice Harlan of the Supreme Court of the United States, in construing the word "fraud," says:

"The 'fraud' referred to in that section means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality."

In the case of Peter O. Strang et al. v. Amariah H. Bradner et al., 114 U. S. 555, 5 S. Ct. 1038, 29 L. Ed. 248, the same eminent judge holds that false pretenses and false representations to prevent a discharge by bankruptcy must be fraud in fact involving moral turpitude or intentional wrong. See, also, Forsyth v. Vehmeyer, 177 U. S. 177, 20 S. Ct. 623, 44 L. Ed. 723. It is held in the Neal Case, supra, as interpreted by Judge Bradley in Hennequin et al. v. Henry Clews et al., 111 U. S. 676, 4 S. Ct. 576, 28 L. Ed. 565, that constructive fraud would not prevent a discharge or release by bankruptcy. This' construction has been adopted and approved in Cooper Grocery Co. v. Gaddy (Tex. Civ. App.) 141 S. W. 825, in Sanger Bros. v. Barrett (Tex. Civ. App.) 221 S. W. 1087, also in an opinion by the Commission of Appeals rendered by Judge Hamilton, and approved by the Supreme Court, in City National Bank of Galveston v. Young, 237 S. W. 243.

In Strickland et al. v. Willis et al. (Tex. Civ. App.) 43 S. W. 602, it is held that to avoid a sale for fraud, it must be shown that the purchaser did not intend to pay in any event, and merely an intention not to pay according to contract is not sufficient. See, also, Slayden-Kirksey Woolen Mills v. Weber et al., 46 Tex. Civ. App. 433, 102 S. W. 471; Walsh v. Leeper Hardware Co. et al. (Tex. Civ. App.) 50 S. W. 630; Schwartz et al. v. Mittenthal et al. (Tex. Civ. App.) 50 S. W. 182.

"To constitute the fraud there must be a preconceived design never to pay for the goods. A mere intent not to pay for the goods when the debt becomes due is not enough; that falls short of the idea. A design not to pay according to the contract is not equivalent to an intention never to pay for the goods, and does not amount to an intention to defraud the seller outright, although it may be evidence of such a contemplated fraud." Burrill v. Stevens, 73 Me. 395, 40 Am. Rep. 366; Bidault v. Wales, 20 Mo. 546, 64 Am. Dec. 205; Black on Rescission and Cancellation, vol. 1, par. 31.

Appellee testified that prior to 1920 the parties who held mortgages on his cattle had always furnished him with what money he needed, not for taking care of the cattle only, but also for his other necessary expenses; that he believed at the time he purchased the material the Cattle Loan Company would permit him to use a sufficient amount of money from his cattle sales to pay his current

bills; that he believed at the time he could pay; that he intended in good faith to pay; that he would not have bought the lumber if he had not thought he could pay; that he did not at any time intend to deceive the lumber company, and that he was solvent in 1920; that the cattle market took quite a slump in the latter part of 1920 and the early part of 1921; that at the time his cows were taken under the mortgage, they were worth only from $10 to $20 per head, and the value of the other cattle had depreciated proportionately; that there was no market for land at the time he filed his petition in bankruptcy. The schedule of property, together with appellee's testimony of the value of said two sections at the time of the purchase of the material from appellant, tends to show that said two sections of land had depreciated about $19,000 in value.

[2-4] The lumber and material was obtained in August, 1920; the petition in bankruptcy was filed on October 25, 1921. Remembering that "false pretenses and false representations" in section 9601, subd. 2, supra, means "positive fraud, or fraud in fact, involving moral turpitude, or intentional wrong," as distinguished from "implied fraud, or fraud in law," and the holding of the court in Strickland et al. v. Willis et al., and other cases cited, supra, that the intention must have been one not to pay in any event, and not merely not to pay according to contract, we are not disposed to hold that the evidence is insufficient to sustain the findings of the jury that appellee had reasonable expectations of paying appellant out of the calf crop of 1920 at the time of the purchase of the material.

[5] The testimony shows that at the time of the transaction in question appellee owned property exclusive of his exemptions which at a fair valuation exceeded his indebtedness by approximately $42,000, the greater part of which was subject to execution, and that his exempt property was worth approximately $7,500; that approximately 15 months after he purchased the material, appellee filed his petition in bankruptcy. These facts, together with the statement heretofore made, disclose that there was evidence supporting the finding of the jury that appellee, at the time of the purchase of the material, was able to pay his debts, and the fact that in the bankruptcy proceedings he scheduled many of the debts, which were at the time of the purchase from appellant in existence, but few, if any, of which were due, is not conclusive of his inability to pay as they matured.

[6-8] The burden was on appellant to establish the facts on which it relied for recovery, and had appellee been unable to pay his obligations as they became due, it would only have been a circumstance tending to show, but not conclusively showing, that he was insolvent (Mensing et al. v. Atchison [Tex.

Civ. App.] 26 S. W. 509; McWhorter v. Langley [Tex. Civ. App.] 220 S. W. 364), and certainly not conclusive that appellee was guilty of such fraud as carried with it moral turpitude or intentional wrong. In the Strickland Case, supra, Willis Bros. were seeking to recover merchandise sold and delivered to J. F. Strickland & Co. They sequestrated the merchandise and alleged, as a basis for the suit, the representation of J. F. Strickland that his company was entirely solvent, and that said company had made statements to R. G. Dun & Co., which showed the solvency of Strickland & Co.; that these representations were made to deceive Willis Bros.; that they did deceive them and were relied upon by them, but for which the merchandise would not have been sold; that the statements and representations as to the solvency of Strickland & Co. were false, and known to J. F. Strickland to be false, or by the exercise of diligence, he could have known the falsity thereof, and that J. F. Strickland & Co. were insolvent at the time of making such representations and such statements.

In discussing the right of Willis Bros. to recover the property, the court says:

"Is it a correct proposition of law to say that an insolvent purchaser, who knows of his insolvency, or might know of it by the exercise of reasonable care, must disclose his insolvency to his vendor, and upon failure to do so the vendor may treat the sale as void for fraud and recover the property? Both reason and authority force a negative answer to this question. In Bank v. Bamberger, 77 Tex. 52, 13 S. W. 961, it is said that 'the mere insolvency of the purchaser, where no fraudulent purpose exists, as also the mere fact that the purchaser has knowledge that his debts exceed his assets, though the fact be unknown and uncommunicated to the vendor, will not vitiate the purchase, is certainly true.'"

The court also holds that before Willis Bros. could rescind the sale and recover the merchandise, they must show that Strickland & Co. "at the time of purchasing said goods, had a fixed intention not to pay for the same. An intent not to pay for the goods, if such there was, formed after the purchase, or an intent, if such there was, not to pay for the goods in accordance with the terms of the contract of sale, would be insufficient."

In Black on Rescission and Cancellation cited, supra, it is stated:

"But the mere insolvency of the buyer of goods on credit, does not, by itself alone, justify the seller in refusing to deliver, or in rescinding the sale after delivery and reclaiming the goods, though the purchaser was aware of his own financial condition, and omitted to disclose it, provided he had not at the time a fraudulent intention with respect to getting the goods without paying for them, and such known and undisclosed insolvency is not, by itself, sufficient evidence that the purchaser had no intention of paying for the property, so as to justify the avoidance of the sale by the vendor on this ground.

"In the next place, many of the cases apply the strict rule that the purchaser must have had an actual intention not to pay for the goods at the time he acquired them, i. e., a positive and predetermined intention, entertained and acted upon at the time of making the purchase, never to pay for the goods. Hence, the sale cannot be rescinded on this ground if the vendee can make it appear by satisfactory evidence that at the time of buying the property he had an honest intention of paying the price, and reasonably thought he would be able to do so at the appointed time, even though he then knew himself to be insolvent and unable to pay."

In the same paragraph the author also says that if a sale is induced by false and fraudulent representations, an intention to pay does not sanctify the fraud. "In such a case of active and aggressive fraud, the question whether or not the wrongdoer intended to pay, is immaterial."

[9] As we construe the authorities, in order for a seller to rescind a sale of personal property and recover it for fraud, the fraud must be active or actual fraud involving moral turpitude or intentional wrong. If he cannot rescind the sale and recover the property without the element of actual fraud, we are unable to conceive by what authority a court of either law or equity would decree a lien in favor of appellant upon the homestead of appellee based on constructive fraud. Appellant insists, however, that if it is not entitled to recover a personal judgment for its debt because of the discharge of appellee in the bankruptcy court, that the uncontroverted evidence shows that appellee committed legal and constructive fraud, and a trust was created in its behalf by such legal fraud which entitles it to an equitable lien against the 160 acres of land and the improvements thereon, which constitutes the homestead of appellee, and in which the lumber and material in controversy was placed.

Mr. W. B. Adkins, upon whose evidence appellant relies to establish constructive fraud, testified that Mrs. Powell first told him they wanted to remodel their home; that he told her they were limited in what they can sell, but to tell Mr. Powell to come to see him; that 10 or 15 days later Powell came in and told witness that he wanted to repair his home and that he would pay witness out of his calf crop; that he would sell around Christmas or January thereafter, the exact date witness was unable to recall; that witness instructed Mr. Smith, the man in charge of the lumber yard, to sell Powell the lumber. "Mr. Powell told me that he would pay me out of his calf crop, and I believed that representation. I would not have sold him lumber and building material without such representations. I was not acquainted with Mr. Powell's financial condition at that time. At that time I did not know or have any infor-mation that his calf crop of 1920 was mortgaged."

[10] False representations to constitute fraud, upon which a recovery can be based, must be of an existing fact, and not a promise of something to be done in the future, unless it be shown that at the time such representation and promise as to the future were made, they were made with the intention, design, and purpose of deceiving, and with no intention at the time of performing them. Burchill v. Hermsmeyer (Tex. Civ. App.) 212 S. W. 767, and authorities cited.

[11] The promise of appellee to pay for the lumber and material out of his calf crop to be sold about Christmas or January after the purchase of the material in August, was clearly a promise to do something in the future, and under the verdict of the jury and the judgment of the court, at the time of making such promise, appellee was acting in good faith, therefore, such promise was not fraud, either actual or constructive.

[12, 13] Was failure of appellee to tell appellant that his calf crop was under mortgage such a suppression of the truth as constituted fraud? According to the verdict and judgment, there was no willful suppression of the truth. According to the record, no fiduciary or confidential relations existed between the parties, no inquiry was made, no statement of appellee's financial condition requested, and none was given; the parties were dealing at arm's length, and mere silence or failure to volunteer information is not fraud, either actual or constructive. Black on Rescission and Cancellation, vol. 1, par. 60.

There was no mutual mistake. Appellant's motion is overruled, and the judgment affirmed.