## BLUMBERG v. LOUIS HENNE CO.
### (No. 7205.)

Court of Civil Appeals of Texas. Austin.
April 4, 1928.

Rehearing Denied April 25, 1928.

1. **Bankruptcy ⚲═423(I)—One obtaining material to construct building under promise to give second lien after previously giving second lien to another was guilty of "fraud" within bankruptcy statutes relating to discharge (11 USCA § 35).**

One purchasing materials with which to construct building under promise that he would secure purchase price indebtedness by second lien on building, after he had already executed second lien on building to another, which, added to first lien, represented full value of building, which facts he withheld from seller, who in good faith relied on promise to his damage, was guilty of positive "fraud," or fraud in fact, within meaning of U. S. Comp. St. § 9601 (11 USCA § 35), excepting such indebtedness from operation of discharge in bankruptcy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fraud.]

2. **Bankruptcy ⚲═363—Seller, taking note for materials obtained by alleged fraud, and filing claim in bankruptcy, did not waive fraud.**

Seller, taking note and security from buyer for building materials obtained by alleged fraudulent representation, and procuring sale of security, and filing claim on note in bankruptcy court, did not waive action for fraud and deceit, although, by taking note, seller elected to affirm contract.

3. **Bankruptcy ⚲═363—Seller, taking note and filing claim for materials obtained by fraud, was not estopped to claim fraud.**

Seller, taking note and security for materials obtained by fraud, and procuring sale of security, and applying proceeds of sale on note, and filing claim in bankruptcy court, was not estopped to claim cause of action for fraud, since estoppel is a doctrine for prevention of injustice, and one entitled to its protection must have been misled.

4. **Mechanics' liens ⚲═198—Statutory materialman's lien only takes precedence of claims on property which are created after material is furnished.**

Statutory materialman's lien on building only takes precedence of claims on property which are created after material is furnished.

Appeal from District Court, Comal County; M. C. Jeffrey, Judge.

Action by the Louis Henne Company against F. G. Blumberg. From a judgment for plaintiff, defendant appeals. Affirmed.

Adolph Seidemann, of New Braunfels, and R. A. Weinert and A. J. Wirtz, both of Seguin, for appellant.

Henne & Fuchs, of New Braunfels, and Marcus W. Davis and Nat L. Hardy, both of San Antonio, for appellee.

BLAIR, J. Appellee sued appellant for damages alleged to have been suffered as the consequence of fraud and deceit in obtaining merchandise and building material necessary to construct appellant's business building in New Braunfels, Tex. The damages alleged were the value of, or the unpaid balance of, the purchase price fixed by an itemized account of the merchandise attached to the petition. The fraud and deceit charged were that appellant obtained the merchandise under false and fraudulent promises and representations that he would secure the indebtedness by a second lien on the building, when as a matter of fact he had already executed a second lien on the building, which, added to the first lien, amounted to the full value of the property, leaving no equity for appellee's protection; and that appellant withheld from it the fact that he had already incumbered the property with a second lien. Appellee further alleged that, without any intention of waiving the fraud and deceit, but solely to protect itself, and as evidence of the balance due on the indebtedness, it accepted appellant's note for $6,364.67, which was secured by a deed of trust on real estate and by other collateral security; that a little more than four months after the execution of this note appellant filed his voluntary petition in bankruptcy, listing the note as one of his debts; that he was discharged of his debts, but that the debt in suit was not discharged, because the fraud practiced in incurring the indebtedness took it out of the operation of the discharge under provision of section 9601, United States Compiled Statutes 1916 (11 USCA § 35), which reads in part as follows:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * (2) are liabilities for obtaining property by false pretenses or false representations. * * *"

Appellant answered formally, and, first, that the note and security were executed in full payment of the account; and, second, that, if any fraud existed, which he denied, by accepting the note and security with full knowledge of the fraud and deceit charged, by filing its claim against appellant bankrupt's estate on the note, by securing an order of sale of the collateral securing the note, and by retaining and applying the proceeds of the sale, $2,000, on the note, appellee waived the fraud and deceit charged, and is estopped to set up such fraud and deceit as a ground for the recovery of damages in this suit.

A trial to the court without a jury re-

sulted in a judgment for appellee for $4,159.-11 damages and $426.25 interest, or a total of $4,585.36.

In the main, appellant attacks the judgment upon the following two grounds:

(1) That the evidence is insufficient as a matter of law to sustain appellee's charges of fraud and deceit so as to take the debt out of the operation of the discharge in bankruptcy.

(2) That, if fraud and deceit existed as charged, by accepting the note and security therefor with full knowledge of the fraud and deceit, and by filing its claim on the note against appellant bankrupt's estate, procuring a sale of the security and applying the proceeds as a payment on the note, appellee waived its cause of action for fraud and deceit, and is estopped to set up the fraud and deceit as the ground for recovery in this suit. We have reached the conclusion that neither contention should be sustained.

Appellant offered no evidence on the issue of fraud and deceit, but relied upon the alleged weakness of appellee's evidence to sustain his first contention. The evidence shows that appellee, Louis Henne Company, a corporation, dealing in hardware, etc., and the Henne Lumber Company, a corporation, dealing in lumber, etc., were separate corporations under the same management and ownership; that in March, 1925, they contracted with appellant to furnish all lumber, hardware, etc., necessary to construct a business building for him in New Braunfels, Tex., under an open account credit arrangement not to exceed at any time $2,000. However, on September 24, 1925, appellant owed appellee on merchandise about $2,000 and the Henne Lumber Company about $7,500, not having paid anything on the accounts up to that time. On that day the manager of the two concerns demanded and insisted that the accounts be paid. Appellant paid $3,500, which was credited on the Henne Lumber Company account, and agreed and promised that, if the two corporations would continue to furnish all necessary material, hardware, etc., to complete the building, he would secure the indebtedness then due and that to be thereafter incurred by a second lien on the building, which, under the undisputed evidence, would have been ample security for all the indebtedness due and contemplated. Appellant made these promises, notwithstanding the fact that he had only six days prior thereto, September 18, 1925, executed a note to a San Antonio Bank for $18,500, and had secured it by a second lien on the property, which, added to the first lien, amounted to the full value of the property and which fact he withheld from appellee's manager. Shortly after these promises and representations were made, and on several occasions still later, the officers and agents of the two corporations requested appellant to execute the second lien, and he insisted that he was too busy, and rendered other excuses, and finally insisted that appellee wait until its attorney and credit manager returned from New York, where he was detained on account of illness, contending that said attorney could then fix up the papers satisfactorily to appellee. The attorney returned on about December 12, 1925, and discovered for the first time that appellant had already executed a prior second lien. According to the trial court's judgment, which is sustained by the itemized account attached to the petition, and the undisputed evidence, appellee furnished appellant merchandise of the value of $4,159.11, after he promised to execute the second lien, and before appellee discovered that he had already executed a second lien. Appellee relied upon the truthfulness and good faith of appellant, who was president of a bank in New Braunfels, and whose business integrity had never been questioned, in making the promises and representations that he would execute the second lien on the building, and would not have furnished the merchandise but for these promises and representations. Appellant filed his voluntary petition in bankruptcy in July, 1926, and listed the note above referred to as one of his debts, from which he sought a discharge.

[1] We think there can be no question but that one who purchases and obtains hardware, building material, etc., with which to construct a business building, under promises and representations that he will secure the purchase price indebtedness by a second lien on the building, when as a matter of fact he had six days prior thereto executed a second lien on the building, which, added to the first lien, represented the full value of the building, and which facts purchaser withheld from seller, who in good faith relied upon the promises and representations, to his damage, is guilty of a positive fraud or fraud in fact within the meaning of the provision of the bankruptcy statutes above quoted as excepting such indebtedness from the operation of the discharge in bankruptcy. Nor do we deem it necessary to enter into a lengthy discussion of the matter here. Suffice it to say that such promises and representations come within the rule announced in the following state and federal decisions holding that the fraud referred to in the bankrupt statute quoted means "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong." Neal v. Scruggs et al. (Neal v. Clark), 95 U. S. 704, 24 L. Ed. 586; Higganbotham-Bartlett Co. v. Powell (Tex. Civ. App.) 270 S. W. 193; Boenner et ux. v. Cicero Smith Lumber Co. (Tex. Civ. App.) 293 S. W 632; Id. (Tex. Com. App.) 298 S. W. 545; Ginsberg v. International Shore Co. (Tex. Civ. App.) 299 S. W. 695; Talcott v. Friend (C. C. A.) 179 F. 676, 43 L. R. A. (N. S.) 649; Hancock v. Blumentritt (Tex. Civ. App.) 269 S. W. 177.

[2] With reference to the second contention, that appellee waived the fraud and deceit by taking appellant's note and the security for it after the discovery of the fraud and deceit charged, and by filing its claim on the note in the bankrupt court, etc., appellant urges much that is irrelevant concerning what constitutes waiver generally because the issue here presented relates to waiver in reference to the purposes of the bankrupt law. Or, as is held by the Supreme Court of the United States in the case of Friend v. Talcott, 228 U. S. 37, 33 S. Ct. 507, 57 L. Ed. 722:

"Coming to dispose of the first contention, we put out of view as irrelevant much that is urged in argument concerning what constitutes an election and waiver in the general sense, since the question here for decision is only whether there was a waiver or election under and for the purposes of the bankrupt law."

The decisions of the Circuit Court of Appeals and the Supreme Court of the United States in Friend v. Talcott Case, supra, conclusively decide the issue of waiver against appellant's contention, and sustain our view that the taking of the note and the filing of the claim on the note in the bankrupt court did not waive the action for fraud and deceit. We quote the following from the opinion of the Circuit Court of Appeals in that case:

"What effect upon plaintiff's right to maintain this action on the case for deceit is exerted by the fact that plaintiff filed against the estate in bankruptcy his claim under the contract of purchase, and shared in the distribution?

"Filing the claim was an affirmance of the contract of sale, and constituted an election not to rescind and attempt to recover what plaintiff had delivered to defendants in pursuance of the contract. But an action for deceit is not based on rescission. It, too, implies an affirmance. It means that plaintiff has elected to abide by the contract, to retain and make the best of what he received thereunder, and to recover the difference between what he received and what he parted with, as his damages in being misled."

The Supreme Court of the United States on the allowance of a certiorari in the Friend-Talcott Case, and in affirming it, made a thorough analysis of the provision of the bankrupt statute above quoted, pointing out that the error in the contention that proving a claim under the contract in the bankrupt court waived the cause of action for damages for fraud and deceit inducing the contract lay in a faulty analysis or construction of the statute as amended, and held as follows:

"Section 17 [11 USCA § 35] enumerates the debts not affected by a discharge; that is, those exempted from its operation. It is apparent that the exemptions do not rest upon any theory of the exclusion of the creditor from the bankrupt act, or of deprivation of right to participate in the distribution, but solely on the ground that, although such rights are enjoyed, an exemption from the effect of the discharge is superadded. The text leaves no room for any other view, since the exceptions in terms are accorded to certain classes of debts which are provable under section 63 [11 USCA § 103], and therefore debts which are entitled to participate in the distribution, the language being: 'A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as,' etc. * * *

"The act of 1841, in the 1st section (5 Stat. at L. 440, c. 9), comprehensively stated the classes of claims which were embraced within its scope, and expressly excluded certain enumerated classes. No exemption from the operation of a discharge when granted was conferred, and therefore all who were within the scope of the act, while enjoying its benefits, were bound by its burdens. * * * The act of 1867 [14 Stat. 517], presumably to correct the injustice which arose from excluding from all participation in the distribution of assets those creditors who it was thought, because of the meritorious nature of their debt, should not be bound by the discharge, departed from the system of excluding such creditors from the act, and, on the contrary, adopted the principle of including them in the benefits of the act, and yet at the same time exempting them from the operation of the discharge."

In the case of Zimmern v. Blount (C. C. A.) 238 F. 745, it is held upon authority of the Friend-Talcott Case, supra, that:

"The plaintiff has the right to proceed upon the note and at the same time seek to enforce his alleged cause of action for deceit. They are in no sense inconsistent remedies."

But appellant insists that the mere taking of the note and security therefor, after the discovery of the fraud, constituted a waiver of the fraud, citing in support of the contention the following rule from 1 C. J. 1039:

"Taking a note for a cause of action on which a tort action could be maintained is a waiver of the tort."

This rule is a correct one, but it only applies to an ordinary tort not arising from fraud inducing a contract. This distinction is clearly pointed out by the Circuit Court of Appeals in the Friend-Talcott Case, supra, in the following language:

"If a claimant in bankruptcy had in truth no contract on which to base his claim; if he did not in fact sell and deliver, nor intend to sell and deliver, the goods to the bankrupt; if the bankrupt obtained possession of the goods by theft or force or trick; and if the claimant proved the theft or force or trick to support the legal fiction of a contract—then it might properly be ruled that the injured party should not be permitted thereafter to prove the same theft or force or trick to support an action in tort. That is, a waiver of the tort would be held to be the basis of the fiction that there was a contract. But whenever there is in truth a contract, no waiver of a tort that is

consistent with the contract's existence is necessary to the contract's enforcement."

Our own courts have held from the beginning that, where a contract has been induced by fraud, the defrauded party has his choice of two remedies. He may rescind the contract, return what he has received under it, and recover what he has parted with; or he may affirm the contract, account for what he has received under it, and recover as damages any balance arising from the fraud. The latter was in effect of what appellee did in this case. It accepted the note as evidence of the contract price of goods obtained through fraud, and accepted the proceeds of the sale of the security given as a payment on the indebtedness it secured. By taking the note, appellee unquestionably elected to affirm the contract. But as is held in the case of Gregory v. Williams, 106 Kan. 821, 189 P. 933:

"The note was the evidence of the debt created by the fraud of the defendant. That fraud was not extinguished when the note was given."

And further that:

"Taking the note by the plaintiff after she had discovered the defendant's fraud, * * * did not take the indebtedness that was evidenced by the note out of the operation of section 17 of the Bankruptcy Act."

In the case of Mills v. Johnson, 3 Tex. Civ. App. 359, 22 S. W. 530, the Court of Civil Appeals held that payment of one of a series of notes given for the purchase price of a race horse after knowledge of fraud on the part of seller in reference to the condition of the horse deprived purchaser of the right to rescind the contract for fraud, but did not waive his right to offset the damages occasioned by the fraud against the other notes. On principle, that case is similar to this case, though the case here presents the converse of the rule. Here appellee merely took a note as evidence of an indebtedness induced by fraud, and accepted certain property as security, which was sold, and the proceeds applied in part payment of the indebtedness. Certainly the taking of the note and security in itself did not waive the fraud. And appellee's counsel testified that he took the note and security without any intention of waiving the fraud and to "get as much as I could under the circumstances." Appellant had, by placing the material in his building, precluded appellee in its right to rescind the contract and recover back its property. Its only remedy when it dis-covered the fraud was to affirm the contract and recover damages for the fraud, which were the value of, or the contract price of, the property, or merchandise obtained through fraud, and the execution of the note and security therefor did not extinguish the debt arising from the fraud, but, under the purposes of the bankrupt law in question, the note merely evidenced the indebtedness induced by fraud. Applying the proceeds of the sale of the security on the note was simply a payment on the indebtedness induced by fraud, and did not waive the fraud.

[3] There is no merit to appellant's contention that appellee is estopped to now claim his cause of action for fraud because of the facts above stated in connection with taking the note. The doctrine of estoppel is clearly defined by the Supreme Court in the case of Davis v. Allison, 109 Tex. 440, 211 S. W. 980, as follows:

"Estoppel is a doctrine for the prevention of injustice. It is for the protection of those who have been misled by that which upon its face was fair, and whose character as represented parties to the deception will not, in the interest of justice, be heard to deny. But one entitled to its protection must have been misled."

Appellant neither pleaded nor proved any fact or facts which would entitle him to the benefits of the rule or doctrine of estoppel so announced in that case.

[4] But appellant insists that appellee could have protected itself by fixing a statutory materialman's lien on the building after it discovered the fraud, Such a lien only takes precedence of all claims on the property which are created after the material is furnished. Trammell v. Mount, 68 Tex. 210, 4 S. W. 377, 2 Am. St. Rep. 479. The undisputed evidence shows appellee furnished the material for which the claim for damages arose after valid first and second liens were on the building, which fact, with reference to the latter lien, appellant withheld from appellee. And, in any event, to require appellee to take such steps after it discovered the fraud would be tantamount to allowing appellant to take advantage of his own fraudulent promises and representations, which, if complied with as made, would have rendered such steps on the part of appellee unnecessary.

We have considered the other propositions urged by appellant, and find them to be without merit, and we therefore affirm the trial court's judgment in all things.

Affirmed.